(90 Misc. Rep. 129)

### STERN v. METROPOLITAN LIFE INS. CO.

(Supreme Court, Special Term, New York County. April, 1915.)

1. INSURANCE ⟨⟶3—RIGHT TO ENGAGE IN INSURANCE BUSINESS—ARBITRARY RESTRICTION.

   The insurance business is a legitimate business, in which any citizen of good character has a constitutional right to engage without arbitrary restriction.

   [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 3; Dec. Dig. ⟨⟶3.]

2. INSURANCE ⟨⟶3—REGULATION—POLICE POWER OF LEGISLATURE.

   While the Legislature may regulate the abuses of the insurance business, it cannot create a monopoly in such business, or authorize a public official to arbitrarily give or withhold permission to pursue same.

   [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 3; Dec. Dig. ⟨⟶3.]

⟨⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. CONSTITUTIONAL LAW ☞275—INSURANCE ☞4—DUE PROCESS--INSURANCE
   SOLICITORS.
      Insurance Law (Consol. Laws, c. 28) § 91, giving the superintendent of
   insurance absolute discretion or arbitrary power to exclude at his
   pleasure qualified persons, approved by their principal, from acting as life
   insurance solicitors, is an unconstitutional interference with the liberty
   of citizens, without due process of law, though it does not appear that
   the superintendent of insurance has arbitrarily exercised this power.
      [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§
   830, 835, 839, 843-846; Dec. Dig. ☞275; Insurance, Cent. Dig. § 4;
   Dec. Dig. ☞4.]

4. CONSTITUTIONAL LAW ☞47—CONSTRUCTION—VALIDITY.
      In determining the constitutionality of a statute, it must be construed
   in the light of what may be done under it, not what has been done.
      [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 43-
   45; Dec. Dig. ☞47.]

Action by Solomon Stern against the Metropolitan Life Insurance
Company. Demurrer to answer sustained.

Order reversed 154 N. Y. Supp. 472. See, also, 153 N. Y. Supp.
1145, 1146.

Leonard Klein, of New York City, for plaintiff.

M. Angelo Elias, of New York City, for defendant.

GUY, J. Plaintiff demurs to defendant's answer as insufficient in
law. The action is brought by an insurance solicitor for services ren-
dered in inducing the members of a benevolent order to insure their lives
with the defendant life insurance company to the extent of $3,500,000
under a written contract of employment between plaintiff and defend-
ant, by the terms of which plaintiff became entitled to commissions ag-
gregating $180,000. The defense demurred to is that the defendant is
a domestic life insurance company, that any services alleged to have
been rendered by plaintiff to defendant were rendered within this state,
and that plaintiff had not procured prior thereto from the superin-
tendent of insurance a certificate authorizing him to act as a life insur-
ance agent, as required by section 91 of the Insurance Law as a condi-
tion precedent to his earning any compensation as insurance agent, sub-
agent or broker.

Section 91 provides:

"No life insurance corporation doing business within this state, or agent
thereof, shall pay any commission or other compensation to any person for
services in obtaining new insurance, unless such person shall have first pro-
cured from the superintendent of insurance a certificate of authority to act as
an agent of such company as hereinafter provided. No person shall act as
agent, sub-agent or broker, in the solicitation or procurement of applications
for insurance, or receive for services in obtaining new insurance any com-
mission or other compensation from any life insurance corporation doing
business in this state, or agent thereof, without first procuring a certificate
of authority so to act from the superintendent of insurance. * * * Such
certificate shall be issued by the superintendent of insurance only upon the
written application of persons desiring such authority, such application be-
ing approved and countersigned by the company such person desires to repre-
sent, and shall be upon a form approved by the superintendent of insurance,
giving such information as he may require. *The superintendent of insurance
shall have the right to refuse to issue or renew any such certificate in his
discretion.* * * * Any person or corporation violating the provisions of

this section shall forfeit to the state the sum of five hundred dollars. On the conviction of any person acting as agent, subagent or broker, of the commission of any act which is a violation of any of the provisions of this chapter, the superintendent of insurance shall immediately revoke the certificate of authority issued to him, and no such certificate shall thereafter be issued to such convicted person by the superintendent within three years from the date of his conviction."

If the statute is valid, it prevents the plaintiff from enforcing a recovery from the defendant of the commissions he has earned, inasmuch as the procuring of a certificate was made a condition precedent to his right to receive any commissions or compensation for his services. Hauser v. North British & Merc. Ins. Co., 206 N. Y. 455–465, 100 N. E. 52, 42 L. R. A. (N. S.) 1139, Ann. Cas. 1914B, 263. If the statute is unconstitutional, then, under his contract with defendant, the plaintiff is entitled to recover the amount claimed. The legislative power to prohibit persons from acting as agents in a business of such public interest as life insurance, without their principal's written consent, is not here disputed; but it is contended by the plaintiff that the statute giving the superintendent of insurance absolute discretion or arbitrary power to exclude at his will and pleasure fit and qualified persons, approved by their principal, from acting as life insurance brokers or solicitors, is unconstitutional, in that it interferes arbitrarily with the right of citizens to follow a legitimate business calling, without giving them an opportunity to conform to reasonable legislative requirements.

[1] The calling of an insurance agent or broker does not of necessity demand special training or knowledge not readily to be acquired by any business man, nor does it involve a consideration of questions of public health or morality or of confidential relationship such as grows out of certain professional and confidential occupations. The general rule is that the insurance business is a lawful and legitimate occupation, which any citizen of good character may under the Constitution freely and lawfully pursue with the consent of his principal. Allgeyer v. Louisiana, 165 U. S. 578, 589–593, 17 Sup. Ct. 427, 41 L. Ed. 832; Hauser v. North British & Merc. Ins. Co., supra, 206 N. Y. 463, 464, 100 N. E. 52, 42 L. R. A. (N. S.) 1139, Ann. Cas. 1914B, 263.

"Where the Legislature may prohibit a business, or an occupation, it may prescribe conditions upon which it may be conducted; but if the business, or occupation, be useful to the citizen, and it be lawful, the Constitution, whether of the state or of the nation, guarantees to him the right to pursue it freely and any arbitrary restriction upon its pursuit should be condemned as an invasion of the guaranty. * * * In very many cases, this court has pointed out that the constitutionality of an act is to be tested by its effect upon the citizen's right freely to pursue lawful occupations; that a statute under the guise of an exercise of the police power cannot arbitrarily interfere with that liberty of pursuit; that the equal protection of the laws means equality of opportunity to all in like circumstances and that classification to be valid must not be arbitrary and discriminate against persons without a basis in reason. These principles have become * * * constituent elements in our popular form of government." Hauser v. North British & Merc. Ins. Co., supra, 206 N. Y. 462, 100 N. E. 53, 42 L. R. A. (N. S.) 1139, Ann. Cas. 1914B, 263.

"The right to follow any of the common occupations of life is an inalienable right. * * * This right is a large ingredient in the civil liberty of the citizen. * * * The liberty of pursuit—the right to follow any of the ordinary callings of life—is one of the privileges of a citizen of the United States. * * * But if it does not abridge the privileges and immunities of a citizen of the United States to prohibit him from pursuing his chosen calling, and giving to others the exclusive right of pursuing it,—it certainly does deprive him (to a certain extent) of his liberty; for it takes from him the freedom of adopting and following the pursuit which he prefers; which, as already intimated, is a material part of the liberty of the citizen." Butchers' Union Co. v. Crescent City Co., 111 U. S. 746, 762, 765, 4 Sup. Ct. 652, 657, 28 L. Ed. 585.

[2, 3] While the Legislature has, under the police power, the right to regulate corporate abuses, and particularly the abuses of the insurance business (People v. Formosa, 131 N. Y. 478, 483, 484, 30 N. E. 492, 27 Am. St. Rep. 612), it may not create a monopoly of a legitimate line of business (People ex rel. Tyroler v. Warden, 157 N. Y. 116, 121–133, 51 N. E. 1006, 43 L. R. A. 264, 68 Am. St. Rep. 763); nor may it authorize a public official to arbitrarily and capriciously give or withhold permission to pursue such lawful occupation. In Yick Wo v. Hopkins, 118 U. S. 356, 370, 6 Sup. Ct. 1064, 30 L. Ed. 220, the court, in declaring a statute vesting a board of supervisors with arbitrary power to grant or refuse laundry licenses in their discretion unconstitutional, as violative of the "due process clauses" of the state and federal Constitutions, say:

"The very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life, at the mere will of another, seems to be intolerable in any country where freedom prevails, as being the essence of slavery itself."

"The term 'liberty,' as protected by the Constitution is not cramped into a mere freedom from physical restraint of the person of the citizen, as by incarceration, but it is deemed to embrace the right of man to be free in the enjoyment of the faculties with which he has been endowed by his Creator, subject only to such restraints as are necessary for the common welfare." People v. Marx, 99 N. Y. 377, 386, 2 N. E. 29, 33, 52 Am. Rep. 34.

"Liberty, in its broad sense as understood in this country, means the right, not only of freedom from actual servitude, imprisonment, or restraint, but the right of one to use his faculties in all lawful ways, to live and work where he will, *to earn his livelihood in any lawful calling, and to pursue any lawful trade or avocation.* All laws, therefore, which impair or trammel these rights * * * (except as such laws may be passed in the exercise by the Legislature of the police power), are infringements upon his fundamental rights of liberty, which are under constitutional protection." Matter of Jacobs, 98 N. Y. 98, 106, 50 Am. Rep. 636.

Under our federal and state Constitutions a person may not be deprived of his liberty without due process of law. Even in the exercise of the police power of the state the Legislature cannot arbitrarily deprive a citizen of his liberty.

"It may, however, be stated generally that due process of law requires an orderly proceeding adapted to the nature of the case in which the citizen has an opportunity to be heard, and to defend, enforce, and protect his rights. A hearing or an opportunity to be heard is absolutely essential. We cannot conceive of due process of law without this." Stuart v. Palmer, 74 N. Y. 183, 191, 30 Am. Rep. 289.

"Generally speaking, it may be said that while wide discretionary power may constitutionally be granted to administrative agents, that discretion

must be one which must be guided by reason, justice and impartiality, and must be exercised in the execution of policies predetermined by legislative act, or fixed by the common law." Willoughby, Const. § 759.

In People v. Klinck Packing Co., 214 N. Y. 121, 108 N. E. 278, the court declared constitutional a statute decreeing one day's rest in seven (Laws 1913, c. 740), but declared unconstitutional a provision empowering the commissioner of labor, in his discretion, to exempt from the provisions of the statute employés in certain lines of employment, holding, Hiscock, J., writing the opinion, that:

"The Legislature cannot secure relief from its duties and responsibilities by a general delegation of legislative power to some one else."

In City of Baltimore v. Radecke, 49 Md. 217, 33 Am. Rep. 239, the court, in construing a resolution of the common council of Baltimore compelling the removal of steam engines from any building after six months' notice to that effect from the mayor, said:

"It commits to the unrestrained will of a single public officer the power to notify every person who now employs a steam engine in the prosecution of any business in the city of Baltimore to cease to do so, and * * * renders his power over the use of steam in that city practically absolute, so that he may prohibit its use altogether. * * * *It lays down no rules by which its impartial execution can be secured or partiality and oppression prevented.* * * * An ordinance which clothes a single individual with such power hardly falls within the domain of law, and we are constrained to pronounce it inoperative and void."

See, also, American School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 23 Sup. Ct. 33, 47 L. Ed. 90.

In Village of Saratoga Springs v. Saratoga Gas Co., 191 N. Y. 123, 83 N. E. 693, 18 L. R. A. (N. S.) 713, it was held, in construing a statute empowering an administrative official to fix rates, that:

"The statute must prescribe some standard by which action of the board should be governed."

The Public Health Law (Consol. Laws, c. 45), in sections 161 and 166, provides what shall be the qualifications of persons applying for a license to practice medicine, and, in section 169, that, upon a report of the state board of medical examiners that an applicant has passed the required examinations, the regents *shall issue to him* a license to practice medicine. So, also, as to dentists, the statute provides that, upon a certificate of the board of dental examiners that an applicant has conformed to the requirements of the Legislature and is recommended for a license, the board of regents have no power to withhold a license. The language of the statute is that upon such recommendation a license *must* be granted.

The Highway Law (Consol. Laws, c. 25), as amended by chapter 491, Laws of 1911, provides that one who has been refused a license as a chauffeur may review by certiorari the decision of the officer refusing the license. Under section 27 of the Liquor Tax Law (Consol. Laws, c. 34), one whose license to traffic in liquors has been revoked or refused may review by certiorari the determination of the official so refusing or revoking. Similar statutory provisions are found in other statutes for a review of like administrative acts.

Section 143 of the Insurance Law, as amended by chapter 12, Laws of 1913, makes it mandatory for the superintendent of insurance to issue a fire insurance certificate of authority to one applying therefor who is trustworthy and is competent to transact an insurance brokerage business in such manner as to safeguard the interests of the insured, and provides for a review by writ of certiorari in case of refusal of a license; but persons desiring certificates of authority to act as agents for life insurance companies are specifically excepted from the provisions of this section, and no qualifications whatever are stated in the entire statute to which applicants for authority to follow the business of life insurance agents shall or may conform, and no provision whatever is made for a review of the acts of the superintendent of insurance in case of the refusal of a license; the superintendent being given absolute power to refuse a certificate for any reason, however arbitrary or unreasonable, or for no reason at all.

[4] The power thus sought to be vested in the superintendent of insurance is a greater power than the Legislature itself can exercise, and it seems fundamental that the Legislature cannot delegate to any administrative officer greater power than it possesses. It is true that no complaint has been made of an arbitrary exercise of this power by the superintendent of insurance; but it is well settled that a statute must be construed in the light of what may be done by virtue thereof, not what has been done. Gilman v. Tucker, 128 N. Y. 190, 200, 28 N. E. 1040, 13 L. R. A. 304, 26 Am. St. Rep. 464; Colon v. Lisk, 153 N. Y. 188, 194, 47 N. E. 302, 60 Am. St. Rep. 609; People v. C. Klinck Packing Co, supra. Such delegation of arbitrary power to an administrative officer is, in my judgment, an interference with the liberty of the citizen without due process of law, and in contravention of both federal and state Constitutions.

Demurrer to answer sustained, on the ground that it is insufficient in law, with leave to defendant to plead over on payment of $10 costs.