## PEOPLE v. McFALL.

### SAME v. TUTTLE.

(City Court of Buffalo. January 17, 1916.)

1. FOOD ⬤⟊12—CRIMINAL PROSECUTION—COLD STORAGE—STATUTE.

Under Public Health Law, § 337, as added by Laws 1911, c. 335, de-- nouncing the keeping of food in cold storage for more than 10 calendar months by any person or corporation engaged in the cold storage busi- ness, amended by Laws 1914, c. 414, taking effect April 17, 1914, to pro- hibit the placing of food in cold storage for such period by any person, defendants, who placed poultry in cold storage prior to the taking effect of the amendment, were not guilty of violating the statute at a time when the poultry had been in storage 10 months, but less than 10 months after the amendment went into effect, since a statute is never given a retro- active effect unless so expressed therein.

[Ed. Note.—For other cases, see Food, Dec. Dig. ⬤⟊12.]

2. STATUTES ⬤⟊230—AMENDMENT—CONSTRUCTION—"HEREAFTER."

The part of a statute which remains unchanged after amendment is. to be considered as having continued the law from original enactment, and the new or changed portion to have become law only at and subse- quent to the passage of the amendment, the word "hereafter," occurring in an amended statute, being construed as meaning as to the original pro- visions subsequent to the 'time of their enactment, and as to the new por- tions subsequent to the time the amendment introducing them took effect.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 311; Dec. Dig. ⬤⟊230.

For other definitions, see Words and Phrases, First and Second Series, Hereafter.]

3. CONSTITUTIONAL LAW ⬤⟊278(4)—FOOD ⬤⟊1—DUE PROCESS OF LAW—COLD STORAGE REGULATION.

Public Health Law, § 337, as added by Laws 1911, c. 335, and amended by Laws 1914, c. 414, providing that it shall be unlawful for any person or corporation engaged in cold storage warehousing, or for any person placing food in cold storage, to keep any food therein for more than 10 months, except butter products, is unconstitutional as invading property rights under the mere pretense of protecting the public health, since other sections (338 and 338a) give the health commissioner power to pro- tect the public in its use of cold storage products.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 781, 782, 799, 800, 820; Dec. Dig. ⬤⟊278(4); Food, Cent. Dig. §§ 1, 2; Dec. Dig. ⬤⟊1.]

Walter A. Tuttle and Frank K. McFall were prosecuted for violat- ing Public Health Law, § 337, denouncing the keeping of food in cold storage for more than 10 months. Finding of not guilty; each defend- ant being discharged.

Joseph A. Warren, of New York City, for the People.

Rebadow, Ladd & Brown, of Buffalo (Henry W. Hill, of Buffalo, of counsel), for defendants.

NOONAN, J. The defendants above named are being prosecuted for violating section 337 of the Public Health Law, which reads as follows:

"Sec. 337. *Time That Cold Storage Foods may be Kept.*—It shall hereafter be unlawful for any person, corporation or corporations engaged in business of cold storage warehousemen or refrigerating, *or for any person placing food in cold storage warehouse,* to keep in storage for preservation or otherwise any kind of food or any article used for food a *longer period than ten* calendar months, excepting butter products which may be kept in said cold storage or refrigerating twelve calendar months."

The original Public Health Law was chapter 49 of the Laws of 1909. It was amended by chapter 335 of the Laws of 1911, which added sections 335 to 339d, covering the subject of cold storage, to the original article. Section 337 was amended by chapter 414 of the Laws of 1914, by adding words underscored above, "or for any person placing food in cold storage warehouse."

The facts in both cases are alike with one exception: The defendant McFall is not a dealer in poultry directly or indirectly. On October 9, 1913, he placed with the Buffalo Cold Storage Company at its warehouse certain poultry which he had purchased for his own private use, and which he subsequently used from time to time solely for his private use. The defendant Walter Tuttle is a dealer in poultry on the Elk Street Market in this city, and has been for some years. On October 9, 1913, he also sent to the Buffalo Cold Storage Company for keeping a considerable quantity of poultry, most of which he afterwards disposed of from time to time in the regular course of business.

On April 17, 1914, the amendment above referred to took effect. On August 19, 1914, an inspector from the health department went to the warehouse and found the poultry belonging to the above-named defendants, and the said defendants are now being prosecuted for having kept the poultry owned by them respectively in cold storage for a longer period than 10 calendar months. It will be noticed at once that when the poultry in question was placed in cold storage there was no law regulating the time that it might remain in cold storage so far as individuals were concerned. It will be noticed, also, that the prosecution was begun in 4 months and 2 days after the passage of the law.

The defendants defend upon two grounds:

First, that the action was prematurely brought. The poultry in question not having been in storage 10 calendar months after the passage of the amendment in 1914, and said amendment not being retroactive, no crime was committed.

The second defense is that the law is unconstitutional for the following reasons:

"First. That the act is an unreasonable regulation and undue restraint of trade, and an infringement upon that provision of the Constitution which provides for the freedom of contracts.

"Second. That the act is retroactive and ex post facto, and makes criminal an act which in its inception was legal and lawful previous to the passage of the act.

"Third. That the act is itself unconstitutional and void, in that it infringes upon the Fourteenth Amendment of the Constitution of the United States, in that it deprives the defendant of property without due process of law.

"Fourth. That the act is unconstitutional and void, in that it infringes upon section 6, article 1, of the Constitution of the state of New York, in that it deprives the defendant of property without due process of law.

"Fifth. That the act itself is unconstitutional, in that it prohibits the use and occupation by defendant of his own property arbitrarily and unreasonably, in violation of the limitations imposed upon the Legislature prohibiting the invasion of the field of private enterprise by undue restrictions and limitations.

"Sixth. That the act is in violation of the commerce clause of the Constitution of the United States, and also the Interstate Commerce Act, in that the state of New York has attempted to pass legislation which interfered with the property of the citizens of other states, and which permits the transportation of goods from one state to another without any interference by any other state."

I am of the opinion that both defenses are good, and that the defendants must be discharged. The question of whether or not the prosecution was prematurely begun is not of great importance at the present time, as that question cannot be raised as to prosecutions instituted now; but I feel that the people are entitled to know the grounds upon which I base my decision, and I will refer briefly to authorities, which I believe sustain my decision in these cases. The question of the constitutionality of the law, however, is a vital and far-reaching one, and it should be disposed of with care, as it affects all pending and future prosecutions under this section.

[1, 2] As to the first proposition, the overwhelming weight of authority seems to be that a statute is never given a retroactive effect, unless it is so expressed in the statutes. The reasons for this are not far to seek. In this case it makes a crime of something that was not a crime when the poultry was placed in cold storage, and there is also the constitutional prohibition against passing ex post facto laws. The proper rule for construing statutes that are passed and afterwards amended is found in Ely v. Holton, 15 N. Y. 595:

"The effect of an amendment of a statute, made by enacting that the statute 'is amended so as to read as follows,' and then incorporating the changes or additions, with so much of the former statute as is retained, is not that the portions of the amended statute which are merely copied without change are to be considered as having been repealed and again re-enacted, nor that the new provisions or the changed portions should be deemed to have been the law at any time prior to the passage of the amended act. The part which remains unchanged is to be considered as having continued the law from the time of its original enactment, and of the new or changed portion to have become law only at and subsequent to the passage of the amendment.

"The word 'hereafter,' occurring in a statute amended in the manner above described, is to be construed distributively. As to the original provisions, it means subsequent to the time of their enactment; as to the new portions, it means subsequent to the time the amendment introducing them took effect."

If the last paragraph above quoted is the law in this state, and to my mind there is not the slightest doubt about it, no prosecution under section 337 of the Public Health Law, as amended by an amendment of 1914, could have been legally started before February 18, 1915. The principle of construction laid down in Ely v. Holton, supra, is followed by many New York Court of Appeals cases, the last one being Homnyack v. Prudential Insurance Company of America, 194 N. Y. 456–460, 87 N. E. 769. This principle of construction is well stated by Judge Early in another form in the case of New York & Oswego Midland Railroad Company v. Van Horn, 57 N. Y. 473. At page 477 he says:

"It is always to be presumed that a law was intended, as is its legitimate office, to furnish a rule of future action to be applied to cases arising subsequent to its enactment. A law is never to have retroactive effect, unless its expressed letter or clearly manifested intention requires that it should have such effect. If all its language can be satisfied by giving it prospective operation, it should have such operation only."

And he cites a large number of cases, quoting from many, in support of the proposition. There is nothing in the amendment of 1914 to section 337 of the Public Health Law that can in any way be construed as giving it a retroactive effect. Authorities almost without number can be cited sustaining the proposition that statutes are always to be given a prospective and not a retrospective effect, but I will conclude my citations on this point with the rule as laid down in 36 Cyc. page 124, as follows:

"It is a rule of statutory construction that all statutes are to be construed as having a prospective operation, unless the purpose and intention of the Legislature to give them a retrospective effect is expressly declared or necessarily implied from language used. In every case of doubt, the doubt must be solved against the retrospective effect."

[3] I think the rule by which the constitutionality of section 337 of the Public Health Law must be determined is that laid down in Matter of Jacobs, 98 N. Y. 98, 50 Am. Rep. 636, as follows:

"When a health law is challenged as unconstitutional, on the ground that it arbitrarily interferes with personal liberty and private property without due process of law, the courts must be able to see that it has, at least in fact, some relation to the public health, and that the public health is the end actually aimed at, and that it is appropriate and adapted to that end. * * * Under the mere guise of police regulations, personal rights and private property cannot be arbitrarily invaded, and the determination of the Legislature is not final or conclusive."

The section is extremely arbitrary. It prevents the keeping of food in a cold storage warehouse by any person after an arbitrary period of 10 months, regardless of the question of whether the food is fit for human use or not. The section is not necessary to protect the health of the public.

The other sections of the law, namely, 338 and 338a, gives the health commissioner all needed power to protect the public in its use of products kept in cold storage. These sections give the health commissioner complete power of supervision and inspection and the power to destroy food that is unwholesome. What more is necessary? If that part of the rule laid down in the Jacobs Case, supra, namely, "and that the public health is the end actually aimed at," is still good law, the section in question must be declared unconstitutional, because its real purport is not to protect the health of the people by seeing that unwholesome food products are not put upon the market, but its real reason for being is to force upon the market any products that any person may have in cold storage after a definite length of time, and thus force the owner thereof to sell when the market is unfavorable and generally at a loss.

The cases at bar are glaring examples of the unreasonableness of such a statute. The defendant McFall had the chickens in storage for

his own private use, while the defendant Tuttle was a dealer in poultry, yet upon the mere fact that this poultry had been in storage more than 10 months the defendants were compelled summarily to dispose of the same regardless of the fact of its unfitness for use. The state offered no evidence upon the question of fitness. It simply proved the prima facie cases as required by statute and rested. The overwhelming proof on the part of both defendants in question was that the food was absolutely wholesome. Evidence was introduced showing experiments that had been made with great care by the health department of the city of Buffalo, which showed that poultry kept in cold storage was absolutely wholesome long after 10 months. It was also undisputed that the Buffalo cold storage warehouse is one of the most complete in the country, and its records show that the temperature was maintained with very slight variation throughout the entire time of the storage of the poultry in question; that it had a duplicate plant, so that, if anything happened to the machinery, it had other means of maintaining the average temperature of the building, and thus preserving the articles committed to its care.

I do not think that the state can successfully contend that poultry properly kept in cold storage is unfit for use in 10 months. If it is actually unfit, the health commissioner has power to destroy it under the other sections above referred to, and section 337 is consequently unnecessary, and need not be invoked by the health commissioner in order to properly protect the community. The Legislature has no constitutional authority to destroy existing property. Wynehamer v. People, 13 N. Y. 378. Depriving an owner of property of one of its attributes is depriving him of his property within the constitutional provisions. People v. Otis, 90 N. Y. 48. In People v. Bowen, 182 N. Y. at page 10, 74 N. E. at page 492, Judge Vann says:

"The courts have not yet held that the Legislature has power to prohibit the sale of milk that is wholesome, even if not up to the standard, provided it is sold for what it actually is and not as pure milk."

In People v. Biesecker, 169 N. Y. at page 57, 61 N. E. at page 990, 57 L. R. A. 178, 88 Am. St. Rep. 534, Judge Cullen says:

"That the Legislature cannot forbid or wholly prevent the sale of a wholesome article of food."

If that statement is still good law, how can the state be permitted under section 337 of the Public Health Law to arbitrarily destroy food without first showing that it is unfit for use?

A little farther on he says:

"I imagine that the sale and consumption of a well-known article of food, or a product conclusively shown to be wholesome, could not be forbidden by the Legislature, even though it assumed to enact the law in the interest of public health."

He further says:

"An enactment of a standard of purity of an article of food, failing to comply with which the sale of an article is illegal, to be valid, must be within reasonable limits and not of such a character as to practically prohibit the manufacture or sale of that which, as a matter of common knowledge, is good and wholesome."

It seems to me this reasoning is directly applicable to the cases at bar. Here the state tries by an absolutely arbitrary act to prohibit any one from having an absolutely wholesome article after 10 months.

The statute before us cannot be justified as an exercise of power to prevent fraud or imposition on buyers and consumers, because this is done by requiring cold storage products to be sold as such. The statute is further unreasonable and arbitrary, in that it makes it a penal offense to keep stuff in cold storage, where it can be kept with the greatest safety, and yet permits it to be kept by a man in his own ice box, or any place that is not a storage warehouse, for an indefinite length of time. In Austin v. Murray, 16 Pick. (Mass.) 121–126, it is said:

"The law will not allow the rights of property to be invaded under the guise of a police regulation for the preservation of health, when it is manifest that such is not the object and purpose of the regulation."

In Watertown v. Mayo, 109 Mass. 315–319, 12 Am. Rep. 694, Judge Colt says:

"The law will not allow rights of property to be invaded under the guise of a police regulation for the preservation of health or protection against a threatened nuisance; and when it appears that such is not the real object and purpose of the regulation, the courts will interfere to protect the rights of the citizen."

This seems to be particularly applicable to the cases at bar. As the preservation of the public health is not the real purpose of section 337, because that can be taken care of under the above sections referred to. In the Slaughter House Cases, 16 Wall. 36, 87, 21 L. Ed. 394, Judge Field says:

"All sorts of restrictions and burdens are imposed under the police power, and when these are not in conflict with any constitutional prohibition or fundamental principles they cannot be successfully assailed in a judicial tribunal. * * * But under the pretense of prescribing a police regulation the state cannot be permitted to encroach upon any of the just rights of the citizen, which the Constitution intended to secure against abridgment."

In Coe v. Schultz, 47 Barb. at page 69, the court very pertinently says:

"I am not willing to concede that the Legislature can create a public nuisance, or a new definition of a public nuisance, unknown to the common-law decisions. I am not willing to concede that the Legislature can constitutionally declare an act or thing to be a common nuisance, which palpably, according to our present experience or information, is not and cannot be, under any circumstances, a common nuisance, by the common-law definition, or common-law decisions. I am not willing to concede that the Legislature can constitutionally declare or authorize any sanitary commission or board to declare the keeping of and use, in any way, of sugar or vinegar to be a common nuisance, because the one is sweet and the other is sour, or for any other reason. By such an unlimited power it is easy to see that any citizen might be deprived of his property without compensation, and without any colorable pretext that the public good required such deprivation. It is not impossible to conceive that at some future day there might be a legislator thinking the use of water in any way to be a nuisance."

The last sentence about describes the situation in the present cases, because the Legislature now seeks to make the defendants summarily

dispose of a perfect article of food, and in effect declare that which is good and wholesome to be a nuisance and a menace to the public health.   In the case of Hauser v. North British & Mercantile Insurance Co., 206 N. Y. 455, 100 N. E. 52, 42 L. R. A. (N. S.) 1139, Ann. Cas. 1914B, 263, the court holds that:

"The constitutionality of an act affecting the business of a citizen is to be tested by its effect upon his right freely to pursue a lawful occupation.  A statute under the guise of an exercise of the police power cannot arbitrarily interfere with that liberty of pursuit;  the equal protection of the laws means equality of opportunity to all in like circumstances, and classification, to be valid, must not be arbitrary and discriminate against persons without basis in reason."

Tested by the above principle the statute applicable to the cases at bar must fail because of its constitutionality.   It arbitrarily discriminates against cold storage warehouses, because it imposes no restrictions upon persons who keep food outside of a cold storage warehouse for a longer period than 10 months, and it interferes with the liberty of pursuit, because it arbitrarily compels a man to dispose of a perfectly wholesome article of food at the end of a certain time.

The Hauser Case, supra, is cited with approval in the case of Stern v. Metropolitan Life Insurance Co., 90 Misc. Rep. 129, 154 N. Y. Supp. 283, in an able opinion by Mr. Justice Guy, of New York City. He cites many well-known cases in support of his opinion, and I think his decision, on general principles, supports the one I am arriving at.

"Property rights cannot be lawfully invaded under the pretense of protecting the public health."   City of Rochester v. Gutberlett, 211 N. Y. 315, 105 N. E. 549, L. R. A. 1915D, 209, Ann. Cas. 1915C, 483.

In arriving at the conclusion that the defendants must be discharged, both because the prosecutions were prematurely instituted and also because of the unconstitutionality of section 337 of the Public Health Law, I am not overlooking the case of People v. Finkelstein, 167 App. Div. 591, 152 N. Y. Supp. 875.   It may be presumptuous of me to think that in making that decision the learned justice of the Appellate Division of the First Department had to ignore the principle of stare decisis in order to find that the prosecution was not prematurely instituted, and in concluding that the law was constitutional they were not confronted with the fact, as I am in these cases, of ample proof showing that the poultry in question was in perfectly fit condition for human food.   I think the facts in the Finkelstein Case, as shown by the opinion, can properly be distinguished from the facts in these cases at bar, and that I may properly arrive at a different conclusion without doing violence to that opinion.

I therefore find each of the defendants not guilty, and each is discharged.