# CHARLESTON.

DONALD C. SWEARINGEN *et al. v.* JOHN C. BOND, *Auditor, etc.*

Submitted April 1, 1924.   Decided April 8, 1924.

1. INSURANCE.—*Law Authorizing Insurance Commissioner to Refuse Agents Certificate or Cancel for Cause Held Constitutional.*

    Sec. 15d, chap. 15 of the Acts of 1923, which gives to the insurance commissioner authority to refuse a certificate of authority or license to act as an insurance agent to one whom he finds not trustworthy and competent to transact the business for authority to do which the application is made; and authorizing him to revoke a certificate or license of such agent whenever upon investigation after due notice and trial, he is satisfied that such agent is guilty of a violation of the insurance laws, or is incompetent or untrustworthy, is not in contravention of the federal or state constitutions. (p. 195).

2. SAME—MANDAMUS.—*Insurance Commissioner May Not Act Arbitrarily; Discretion of Insurance Commissioner in Refusing or Revoking Agent's Certificate Not Controlled by Mandamus, Unless Result of Ulterior Motive.*

    Said section, properly construed, does not give the insurance commissioner arbitrary power to refuse such certificate or revoke it so as to render the section unconstitutional; and if upon investigation and due trial he has found that the applicant or holder has violated the insurance laws and is untrustworthy or incompetent to transact the business authorized by such certificate or license, his judgment and discretion will not be controlled by mandamus, unless it is clear that his decision was the result of caprice, passion, partiality or some ulterior motive.   (p. 199).

Original mandamus by Donald C. Swearingen and wife against John C. Bond, State Auditor, etc.

*Writ denied.*

*H. W. Houston,* for relators.

*E. T. England,* Attorney General, *Charles Ritchie,* Assistant Attorney General, and *Robert B. McDougle,* for respondent.

LIVELY, JUDGE:

Donald C. Swearingen and Lorena M., his wife, seek to compel, by writ of mandamus, John C. Bond, auditor of West Virginia, and ex-officio insurance commissioner, to issue to them certificates of authority or licenses to act as insurance agents in this state, as of the 1st of April, 1924. The petition in substance avers that since the year 1917, they have been engaged in general fire insurance business in this state, and continuously from that time have received certificates of authority to act as insurance agents representing several substantial fire insurance companies all authorized to do business in this state and which are now authorized to do business in this state and which have requested them to continue to act as agents for the year beginning April 1, 1924; that they are each trustworthy and fully competent to transact insurance business as agents, and never have been convicted of the violation of the insurance laws; and have fully complied with all the insurance laws and are now entitled to receive certificates of authority or licenses to act as such agents; but that the insurance commissioner has refused to issue to them such certificates of authority; and the prayer is that he be compelled to do so. The return admits the allegations of the petition; except that it denies that the applicants are trustworthy and fully competent to transact insurance business as agents in this state and denies that they have fully complied with all the laws governing the issuance of certificates of authority for the doing of such business in the state. The reasons given for the refusal are: that the applicants, while acting as insurance agents prior to 1922, violated the provisions of the insurance laws in the employment of Henry H. Hersch to solicit and procure for them policies of insurance, he not then being a licensed solicitor, and contrary to the provisions of sections 15D and 15C of chapter 34 of the Code; that afterwards, on March 1, 1923, they had Hersch appointed as their solicitor, the object being to secure the business of the United Woolen Mills Company and that the appointment was made to circumvent the anti-rebate laws of this state; and that applicants were guilty of placing insurance in an unauthorized company in at least two instances, contrary to

the provisions of section 60A (1) and section 53A of chapter 34 of the Code. The return further says that in the summer of 1923 he caused notices to be served on the applicants setting out in detail the substance of the above alleged violations and stating a day for a hearing thereon in Parkersburg, West Virginia, and that Donald C. Swearingen, representing himself and his wife, appeared and was present at the hearing; the evidence taken at the hearing was preserved, and transcribed (all which is made a part of the return), from which the insurance commissioner found that the defendants were guilty of the infractions of the insurance law charged and that they were not trustworthy or competent to transact business as insurance agents; but that upon request of Donald C. Swearingen his finding was not reduced to writing or made public but the same was held in abeyance upon request of Swearingen, and upon his assurance, that he would dispose of his insurance agency and business before the expiration of his license; and acceding to this request and relying upon these assurances he then took no action until the petitioners made application in the month of March for the renewal of their license for the year beginning April 1, 1924, when he reduced his finding to writing and notified them by letter that he would refuse to renew; and a copy of the letter and finding are exhibited with the return. The return says the evidence of the violation of the insurance laws taken at the hearing in Parkersburg, fully sustains the charges, and that by consideration thereof he found that applicants are not trustworthy and competent to act as fire insurance agents.

The petitioners demurred to the return and moved to quash. The allegations of fact contained in the return are not disputed.

To sustain the motion to quash, and the motion to award the peremptory writ petitioners rely solely upon the proposition that section 15C of chapter 15 of the acts of 1923, amending chapter 34 of the Code, the insurance laws, is unconstitutional, null and void, because it gives arbitrary power to the insurance commissioner to issue or refuse to issue licenses to agents; that to that extent it is void as being in contravention of the Fourteenth Amendment to the Federal

Constitution and section 10 of our bill of rights. Section 15D of chapter 15 of the Acts of 1923 reads:

> "No person shall act in the solicitation or procurement of applicants for or policies of insurance * * * * without first procuring a certificate of authority as agent from the insurance commissioner which certificate shall be renewable on the first day of April in each year; said insurance commissioner shall not issue such certificate of authority to any person * * * * whom he finds not trustworthy and competent to transact the business for authority to do which application is made; and on conviction of any person acting as such agent, of the violation of any provision of this law, the insurance commissioner shall forthwith revoke the certificate of authority issued to him, and no certificate shall be thereafter issued to such convicted person, until one year from the date of conviction.
>
> "Whenever the insurance commissioner upon investigation is satisfied that any agent acting under his supervision and holding a certificate of authority from him is violating or has violated the insurance laws of West Virginia, or that he is incompetent or untrustworthy, or whenever he shall proceed to revoke a certificate or license of such agent under any section of this law he shall notify such agent of his findings, and state in writing the complaint against him and require such person on a date named, which date shall not be less than thirty days after service of notice, to show cause why his license should not be revoked."

The remaining part of the section provides that if the agent does not present good and sufficient reasons why his authority should not be revoked, the commissioner may revoke it; and provides that the decisions and findings of the insurance commissioner "made under the provisions of this section shall be reviewable by proper proceedings in any court of competent jurisdiction within this state." The statute is attacked as unconstitutional because it does not provide any method by which the untrustworthiness and incompetency of an applicant may be judicially determined. Courts are not quick to declare a law unconstitutional. The presumption is that every act of the legislature is in consonance with the constitution. The conflict between the organic law and a statute must be clear and palpable in

order to defeat and annul the latter. This court recognizes that it is a grave responsibility to declare invalid the deliberate enactments of a coordinate branch of the government. It will never be done in a doubtful case. If possible the statute will be given life and validity by reasonable construction. The insurance business is quasi-public in its character, and the state may, under its police power, determine who may engage in the business and prescribe the terms and conditions on which it may be conducted and generally to regulate it and all persons engaged in it. In the exercise of this power it may pass statutes for the regulation of insurance agents and the conduct of their business. *LaTourette* v. *McMaster*, 248 U. S. 465; 63 L. Ed. 362; *Phoenix Ins. Co.* v. *Burdett*, 112 Ind. 204. The legislature may require qualifications in persons engaging as agents in the insurance business, may require them to obtain license therefor and may provide for the refusal to issue or revoke such licenses, after having been issued, for causes, specifying them. It is generaly held that the legislature cannot invest an officer with *arbitrary* power to determine whether an agent selected by an insurance company is a suitable person to act as such; nor may it invest a state officer or any other agency with *arbitrary* power to grant or refuse such licenses. The business of acting as an insurance agent is a legitimate one. *Welch* v. *Maryland Casualty Co.*, 47 Oklahoma, 293; L. R. A. 1915E, p. 708; *Stern* v. *Metropolitan Life Ins. Co.*, 154 N. Y. Supp. 283. These two cases last cited, together with the celebrated case of *Yick Wo* v. *Hopkins, Sheriff*, 118 U. S. 356, are relied upon by counsel for applicants to sustain their proposition that the statute in question invests in the insurance commissioner arbitrary power, at his will or whim, to refuse to issue license to an insurance agent, or to revoke one after it has been issued.

An inspection of the *Stern* case above cited discloses that the objectionable feature of the statute read: "The superintendent of insurance shall have the right to refuse to issue or renew any such certificate in his discretion." In commenting upon this clause of the statute the court said that while the legislature had the right to regulate abuse of the insurance business, it could not authorize a public official to

arbitrarily and capriciously give or withhold permission to pursue such lawful occupation. The certificate to the insurance agent there under consideration was for authority to act as a life insurance agent; and the court pointed out that in the fire insurance laws it was provided that the superintendent of insurance was required to issue a fire insurance certificate to one applying therefor who was trustworthy, and who was competent to transact an insurance brokerage business in such manner as to safeguard the interests of the assured, and a provision was found in the fire insurance statute which provided for a review by writ of *certiorari* in case of a refusal of a license by the superintendent of insurance; and it was pointed out that the statute governing applications and issuance of certificates of authority to follow the business of life insurance agents made no provision for review of the acts of the superintendent in case of refusal, and that official had absolute power to refuse a certificate for any reason, however arbitrary or unreasonable, or for no reason at all. In the matter of the issuance of certificate of authority to a fire insurance agent the qualifications of trustworthiness and competency to transact the insurance brokerage business entered while in the matter of the issuance of a certificate for authority to solicit life insurance the official was given absolute and arbitrary authority to refuse. In the case at bar the insurance commissioner can not refuse to issue license to a person otherwise conforming to the laws unless he finds that the applicant is not trustworthy and not competent to transact the business as such agent. In *Welch* v. *Maryland Casualty Co., supra,* the insurance commissioner was given authority, ''for cause shown'' to refuse to license an agent; and also ''for cause shown'' to determine any person so appointed to be unsuitable to act as such agent. The court held that the power which was vested in the insurance commissioner authorized him to issue license to whomsoever he chose and to withhold license arbitrarily from any one. Any cause sufficient to him, whether fanciful or real, meritorious or frivolous, would justify him in refusing to issue a license. It will be interesting to note that the supreme court of Iowa in the case of *Noble* v. *English,* 183 Iowa 893 (1918) refused

to follow the *Welch* case, holding that the provision in the insurance laws of that state (Iowa) which authorized the insurance commissioner to refuse, *for good cause,* licenses to insurance agents, did not vest in him arbitrary power; that it was a reasonable regulation in the interest of the public and its proper exercise would be upheld. The mandamus there sought was refused. In the *Yick Wo* case the ordinance vested a board of supervisors with arbitrary power to grant or refuse laundry licenses in their discretion. It will be observed that these cases turn upon statutes, either state or municipal, which attempt to vest arbitrary power relative to the granting of licenses. In harmony with these decisions are the cases of *Noel* v. *People,* 187 Ill. 587; *State* v. *Tenant,* 110 N. C. 609; *Sioux Falls* v. *Kirby,* 6 S. D. 62.

The statute before us in the instant case is quite different from those held to be invalid in the cases above referred to. There is no such absolute power given to the insurance commissioner as would warrant him to arbitrarily refuse to grant or revoke a license or certificate of authority to an insurance agent. Applicant must have the qualification of trustworthiness and competency in the insurance business; and the commissioner must find that he lacks these qualifications before he can refuse. In *State* v. *Dent,* 25 W. Va. 1, defendant was convicted of practicing medicine without a state license. He held a diploma from the American Medical Eclectic College of Cincinnati, Ohio, which he had submitted to the medical board and which they refused to consider because they deemed that college not to be a reputable one. The statute permitted certain persons to practice medicine, including, among others, "all persons who were graduates of a *reputable* medical college in the schools of medicine to which the persons desiring to practice belong." It was provided that every such person should present his diploma to the state board of health and if it was found to be genuine and issued by such reputable medical college to the person presenting it the board was required to issue, and deliver to him a certificate to that effect, and the diploma and certificate entitled the person named in such diploma to practice medicine. The board, as above stated, had refused to give the defendant a certificate, on the ground that the college issuing it was not a reputable college, and this pro-

vision of the statute was attacked because of the alleged arbitrary and tyrannical power conferred upon the board in that it could at pleasure decide what college was reputable. The court said that if the law was objectionable at all it was because a rather indefinite discretion was left to the board of health to distinguish between a reputable and a disreputable college; but it was said that it was no more objectionable on that ground than discretion conferred on medical examiners to decide whether the applicant possessed a moral character, a provision which had been generally upheld. In obtaining license to practice law and admission to the bar the applicant is required to obtain from the county court of the county in which he has resided a year a certificate that he is of good moral character—a status, the method of determining which is rather indefinite. In years past licenses could not be issued for the retail of spirituous liquors unless the county court certified of record that the applicant was not of intemperate habits. No standard of determining this qualification was prescribed. One licensing board might refuse because it considered the applicant intemperate in his habits; while another in an adjoining county might determine the reverse. Each would have discretion to determine what constituted intemperate habits, depending upon the conception of members of the licensing boards as to what degree intemperance would operate as a bar. It is not for the courts to question the wisdom of the legislature in fixing the qualifications of an insurance agent or whether it has adopted a wise method in determining whether an applicant is trustworthy and competent to engage in that business—a quasi-public business which is so intimately connected with the welfare of modern society. As was said by Judge GREENE in the Dent case: "For this court to undertake to say that the legislative act fixing these qualifications and declaring how they are to be shown to exist was to be treated as a nullity, and that the courts should, as insisted by counsel, themselves determine whether such qualifications existed in each particular case, would be a bold usurpation of authority of this court and would directly violate Article V of the Constitution." In *State ex rel Dodd* v. *Hill, Banking*

*Com'r.,* 84 W. Va. 468, the statute provided that no charter should be issued to any bank to do business until the application therefor had been approved in writing by the commissioner of banking. Dodd applied for a charter, complying with all the statutory requirements therefor, but the commissioner refused to approve it in writing. Dodd applied to this court to compel performance of that duty under the assumption that the only duty the commissioner was required to perform was to determine the formal sufficiency of the papers submitted for examination and approval. The commissioner in his return said he had considered all questions connected with the location of the bank, and reached the conclusion that a bank was not needed there and would be of no real value to the people of that community, and that the heavy expenses connected with the operation would not enable the bank to make any returns to the stockholders. While the statute did not prescribe any ground on which the commissioner could base a refusal, the court said that in considering the banking act as a whole the commissioner was given large discretionary powers and his decision was not subject to judicial review unless it was clear that he had wilfully and arbitrarily disregarded his duty. In *State ex rel Hamrick v. County Court,* 92 W. Va. 222, the statute providing for the issuance of a license for the purpose of keeping a pool table for public use required application in writing stating the house and describing the place for which the license was desired, and provided that "The court may *at its discretion grant or refuse such application."* We held that a proper construction of this statute did not give the county courts or municipalities arbitrary discretion to grant or refuse such licenses. In that case we held, Judge MILLER writing the opinion of the court, that while by the language of the statute arbitrary power might possibly be inferred, the statute would not be given such construction as would render it void as violative of the constitution. And we there held that if upon inquiry by the counsel it determined that the applicant was not a proper person to conduct the business and had theretofore violated the statute in the conduct of the business for which he then applied for a license, they might,

within the reasonable discretion conferred upon them, refuse to grant the license, and their judgment would not be subject to review by mandamus. If a board or commissioner, or other agency, be invested with judicial powers to pass upon the qualification of applicants for licenses or discretionary power to issue the licenses, the general rule, almost universally followed, is that mandamus will not lie to review the exercise of such judgment or discretion. See numerous cases cited in note in 16 Am. & Eng. Ann. Cas. p. 183; *Dillon v. Bare,* 60 W. Va. 483.

It will be observed that the insurance companies which desire the services of an agent in this state must request his appointment by the auditor; and it is suggested that the words "trustworthy" and "competent" refer to the relationship existing between the insurance company and its selected agent, about which the commissioner of insurance has no concern. We do not think that is the proper interpretation of the use of these words in the statute. The commissioner, representing the state and the public with which the insurance companies and their agents deal, is concerned to ascertain whether the selected agent is trustworthy and competent in carrying out and obeying the provisions of the insurance laws which it is his duty to see are faithfully administered for the welfare of the public. An inspection of the insurance laws and the supervisory powers of the commissioner will impel this conclusion. The case of *Vorys, Supt. v. State ex rel. Connell,* 67 Ohio St. Rep. 15, is quite similar to the one under consideration. Connell had been selected as agent for a life insurance company authorized to do business in Ohio, and applied to the insurance commissioner for license, tendering proper fees, having performed all the conditions precedent to such application, and was refused. He sought to compel the granting of the license by mandamus. The commissioner answered that Connell, before obtaining a license and in violation of the statute, had solicited applications for the insurance company and as a part of the solicitation had offered to rebate a portion of the regular premium; and alleged that it was in his discretion to refuse. The lower court held the return not sufficient and awarded the peremptory writ;

but upon appeal the supreme court reversed the decree, holding that because the statute required the commissioner, upon being satisfied that any insurance agent had violated any of the provisions of the insurance law, to revoke his license as agent for so offending, and that no license should be granted to him for one year after such revocation, it would have been the duty of the superintendent to revoke the agent's license *if one had been issued;* and at the time of the application he would have been without authority to grant another; therefore, his refusal was in accordance with the spirit of the statute and within its obvious purpose, and it was within his discretion, if not within his imperative duty, to refuse.

The return says that applicants have been guilty of serious infractions of the insurance laws ascertained after due notice and hearing. There is no denial. The answer also says that the revocation of the former license was not made, the commissioner relying upon the assurances and promises of applicants that they would dispose of their insurance agency and not ask for a renewal of their licenses at the end of the year. This is not denied. We hold that the statute is constitutional; that a proper construction of the statute does not vest in the insurance commissioner arbitrary and unreasonable power to refuse to issue a license to an insurance agent; that he has discretion in so doing; and that his discretion has not been abused. The writ will be denied.

*Writ denied.*