## CHARLESTON.

REED *v.* LAWSON, *Auditor, etc.*

(No. 6795)

Submitted May 27, 1930. Decided May 31, 1930.
(Rehearing Denied July 18, 1930.)

*Howard B. Lee,* Attorney General, *R. A. Blessing* and *W. Elliott Nefflen,* Assistant Attorneys General, for plaintiff in error.

*Nesbitt, Goodwin & Nesbitt,* and *Poffenbarger & Poffenbarger,* for defendant in error.

LITZ, JUDGE:

This writ involves the propriety of a judgment of the circuit court of Kanawha county, upon certiorari, reversing the ruling

of the respondent, Edgar C. Lawson, auditor and ex officio insurance commissioner of the state of West Virginia, in revoking the certificate of authority of the petitioner, Carroll W. Reed, to act as insurance agent. The original proceeding was instituted by the commissioner of insurance under section 15d, c. 34, 1923 Code, as re-enacted and amended by chapter 69, Acts 1925, which provides: ''No person shall act in the solicitation or procurement of applications for, or policies of, insurance for any company referred to in this chapter except as solicitor under section 15-c of this law, *without first procuring a certificate of authority as agent from the insurance commissioner,* which certificate shall be renewable on the first day of April in each year; and said insurance commissioner shall not issue such certificate of authority to any person who is not a resident of this state, and whom he finds not trustworthy and competent to transact the business for authority to do which application is made; and on conviction of any person acting as such agent, of the violation of any provision of this law the insurance commissioner shall forthwith revoke the certificate of authority issued to him, and no certificate shall be thereafter issued to such convicted person, until one year from the date of conviction. * * * Whenever the insurance commissioner upon investigation is satisfied that any agent acting under his supervision and holding a certificate of authority from him is violating or has violated the insurance laws of West Virginia, or that he is incompetent or untrustworthy, or whenever he shall proceed to revoke a certificate or license of such agent under any section of this law he shall notify such agent of his findings, and state in writing the complaint against him and require such person on a date named, which date shall not be less than thirty days after service of notice, to show cause why his license should not be revoked. If on the date named in said notice the said agent does not present good and sufficient reason why his authority to transact business in this state should not be revoked, the said commissioner shall revoke such person's certificate of authority. All decisions and findings of the insurance commissioner made under the provisions of this section shall be re-

viewable by proper proceedings in any court of competent jurisdiction within this state.''

The specifications of charges follow:

''1st. That in the latter part of August and the early part of September, 1928, in the absence of Mr. J. McF. Sweeney from Wheeling, the agent for the Equitable Life Assurance Society of the United States at Wheeling, and knowing at the time that Mr. Sweeney had secured two applications for life insurance from Mrs. Jessie List Hazlett, in the Sun Life Assurance Company of Canada, and the Aetna Life Insurance Company, you visited Mrs. Hazlett and through fraudulent and false misrepresentations persuaded her to *drop* these two policies previously applied for and make an application for a policy for $50,000.00 in the Mutual Benefit Life Insurance Company; that you rushed through the application and examination and after the papers were completed, you had Harry F. Jefferson, an agent of the Equitable Life Assurance Society of the United States, who was to share with Mr. Sweeney in the commissions on the two policies written or applied for by him, appointed as an agent for the Mutual Benefit Life Insurance Company, and had him sign the application and papers of Mrs. Hazlett in your company, although he had nothing to do with the solicitation of this policy, and knew nothing about it until the papers were brought to him for his signature; that this policy was rushed through and delivered to Mrs. Hazlett before Mr. Sweeney returned or had knowledge of the transaction.

''2nd. That knowing that Mrs. Jessie List Hazlett was friendly to Mr. Sweeney, you falsely and fraudulently represented to her that you were acting for Mr. Sweeney in taking her application in your company, the Mutual Benefit Life Insurance Company, and that he would get the credit therefor, and receive the commissions, but you paid all the commissions to Harry F. Jefferson whom you had appointed as your agent for this purpose. You even had Mrs. Hazlett sign a statement in writing that you had made no such representations, but which she insisted on changing and did modify the same.

''3rd. That you represented to Mrs. Hazlett that the prem-

ium of the policy in the Sun Life Assurance Company was $1,200.00 more than in your company, which statement was false and misleading, and you afterwards tried to explain this away by stating that the commissions Mr. Sweeney would receive from the Sun Life policy would be $1,200.00 more than in your company, which statement was also false.

"4th. That you made incomplete and unjust comparison between the policies of the Ætna Life and the Sun Life and your company's policy, knowing that they were misleading and false, for the purpose of inducing Mrs. Hazlett to apply for your policy.

"5th. That you have been guilty of unprofessional and unethical conduct as an insurance agent."

The commissioner found, upon a hearing, that all except the third charge had been established, and revoked the petitioner's license or certificate of authority as agent for the Mutual Benefit Life Insurance Company, Ætna Life Insurance Company, Mutual Life Insurance Company of New York, Atlantic Life Insurance Company, Lincoln National Life Insurance Company, Missouri State Life Insurance Company, and Provident Mutual Life Insurance Company. The petitioner has been general agent for West Virginia of the Mutual Benefit Insurance Company since 1917, and at the time of the institution of the charges, held certificates of authority as soliciting agent for the remaining companies named. Soon after similar charges, preferred against him about ten years ago, had been dismissed upon a hearing by John S. Darst, then auditor and ex officio insurance commissioner, the Wheeling Life Underwriters' Association, by unanimous vote, expelled Reed from membership. The evidence concerning the transaction upon which the specific charges are based discloses that Edward Hazlett, a citizen and resident of Wheeling, died in April, 1928, seized and possessed of a large estate, including a large amount of life insurance, survived by his widow, Jessie List Hazlett, sixty-six years of age. A considerable part of this insurance had been written in the Equitable Life Assurance Society, represented by J. McF. Sweeney of Wheeling. A large policy was also carried in the Mutual Benefit Life In-

surance Company. Some time later, Joseph Jefferson, a co-executor of the estate with the Dollar Savings & Trust Company of Wheeling, advised Reed and Sweeney that Mrs. Hazlett would likely decide in the near future to apply for insurance on her own life, and that he would keep them informed concerning the matter. On August 14th, following, Jefferson informed Sweeney that Mrs. Hazlett had decided to apply for $100,000 of insurance. It was agreed at the time between Jefferson and Sweeney that the latter would secure the insurance for Mrs. Hazlett and divide his commissions with the former's brother, Harry F. Jefferson; the arrangement being understood by Mrs. Hazlett. Joseph Jefferson, having recently inquired of Reed the amount of insurance his company would write a prospect sixty-six years of age, suggested that the application be given to the Mutual Benefit Life Insurance Company. Sweeney, however, objected, on the ground that a recent complaint had been made by one of his agents involving unethical conduct on the part of Reed in an insurance transaction. Joseph Jefferson wrote Sweeney August 14th: ''This is to confirm 'phone conversation of today in which the writer advised you that Mrs. Jessie List Hazlett would make application for $100,000 life insurance through yourself and Harry F. Jefferson, the writer's brother, who is on a part time basis with your company. I appreciate the interest you have taken in Harry and trust that you and he will be able to broker this insurance satisfactorily.'' On August 15th, Sweeney secured from Mrs. Hazlett an application for $50,000 of insurance in the Ætna Insurance Company and an application for like amount in Sun Life Assurance Company of Canada. On the following day, he left for Canada, advising Joseph Jefferson that the policies would arrive before his return. About August 25th, Reed approached Joseph Jefferson to secure more definite information concerning the supposed sixty-six year old prospect. In the ensuing conversation between them, Reed, learning of Sweeney's applications, requested Jefferson to consult Mrs. Hazlett with the view of inducing her to accept insurance in the Mutual Benefit Company. This Jefferson declined to do. Reed then interviewed her brother, A. S. List, with

the same purpose in mind. In his efforts to enlist the influence of her brother, Reed insisted that a policy in his company would be more advantageous to Mrs. Hazlett than in the Ætna or Sun Life Company. Failing in his purpose with List, Reed telephoned Mrs. Hazlett at her home on Saturday afternoon for permission to discuss the matter with her in person. Her answer was that she could see him at the office of Joseph Jefferson on the following Monday. He insisted on an interview at that time because, as he claimed, of his decision to leave the city in a few days for a trip to Canada. She finally consented, and on reaching her home, he proceeded with his plan to convince her of the superior advantages offered by his company, and in doing so, presented her with a written memorandum showing an incomplete comparison of policies as follows:

"Comparison of Cash Values
Ordinary Life Plan

$100,000                                             Age 66

| Years in force | Mutual Life Benefit | Ætna of Hartford | Sun Life of Canada | Mutual Life of N. Y. |
|---|---|---|---|---|
| 1 " | $ 3098.00 | None | None | None |
| 2 " | 7634.00 | " | " | " |
| 3 " | 12090.60 | $ 9500.00 | $. 8800.00 | $10596.00 |
| 4 " | 15980.00 | 13300.00 | Not shown | 14730.00 |
| 5 " | 19775.00 | 17100.00 | 16046.00 | 18775.00" |

These figures, though correct in the main, are, according to the opinion of numerous reputable insurance men, misleading and deceptive for the purposes of demonstrating the comparative advantages offered by the respective companies named.

The general statement of Reed (which he claims to have made to Mrs. Hazlett at the time) that the differences in the cash surrender values of policies in the several companies were less after the first five years, is not sufficient to relieve him of the specific charge of deception in employing an incomplete written comparison of the policies for the purpose of inducing her to buy insurance in his company. She had not requested any comparison of policies.

Section 15a of the Insurance Law (Code, c. 34) provides:

"No insurance company, association or society, officer, director, agent, solicitor or broker, or any person, firm, association or corporation shall make any misrepresentation or incomplete comparison of policies, oral, written or otherwise, to any person insured in any company for the purpose of inducing or tending to induce such person to take out a policy of insurance, or for the purpose of inducing or tending to induce a policy holder in any company to lapse, forfeit, or surrender his insurance therein, and to take out a policy of insurance in another like company."

Mrs. Hazlett hesitated to deal with Reed, at the time stating that she intended the insurance to go to Mr. Sweeney. Reed replied, in effect, that it was all the same and that Sweeney would get the benefit of the commissions, or at least half of them. She finally signed an application in the Mutual Benefit Company, and Reed rushed her physical examination the same evening. On the following day, after securing the signature of Harry F. Jefferson to the application, Reed mailed it, the medical examination of Saturday, and a second specimen taken Sunday to the company, and wired for quick action. Jefferson had not been licensed as an agent for the Mutual Benefit Company. Receiving two policies of $50,000 and $10,000, respectively, on the morning of September 6th, Reed immediately called Mrs. Hazlett by telephone. She refused to accept either policy, informing him, according to his evidence, "rather emphatically over the telephone that she was not going to do anything until Mr. Sweeney came back." He replied it would be alright and that he would leave the policies with Joseph Jefferson. He promptly called Jefferson about the matter and within a short time was advised by Jefferson that she had accepted the $50,000 policy. Jefferson, on the same day, wrote Sweeney at Quebec, Canada, as follows: "Received your letter this morning and have also read letter from you to Carroll W. Reed. Wish to advise that Mrs. Hazlett has firmly decided not to take over $100,000 life insurance. She has accepted one $50,000.00 policy with the Mutual Life of New York and paid for same. Through Harry F. Jefferson and Carroll W. Reed, a policy is in hand for $50,-000.00 with the Mutual Benefit Life Insurance Company of

Newark. This policy was accepted and paid for by Mrs. Hazlett this morning. The matter of issuing this policy was handled direct by Carroll W. Reed and Harry F. Jefferson last Saturday at Mrs. Hazlett's home. The examination was made, application signed by Harry Jefferson as agent, application left Wheeling Sunday morning and the policy was delivered today, as stated above.'' September 13th, Reed paid Harry F. Jefferson the full commission on the initial premium amounting to over $1,800. On his return to Wheeling, September 16th, Sweeney presented a policy for $37,500 in the Ætna Company and one for $25,000 in the Sun Life Company to Mrs. Hazlett, both of which she refused to accept upon the ground that she did not want any more insurance, and that she had signed the application for the policy in the Mutual Benefit Company under the impression that Sweeney's rights would not be thereby prejudiced. On complaint of Sweeney, Reed wrote him September 20, 1928, concerning the matter, stating: ''I felt it my duty to place the facts before the applicant, and did so, with the understanding that the application would be written in the name of Harry F. Jefferson as agent. An agreement was negotiated with Mr. Jefferson before the application was submitted. *I have paid the full commission to him in accordance with my understanding with Mrs. Hazlett.''* October 12, 1928, Harry F. Jefferson wrote Thomas B. Sweeney, manager of the Equitable Life Assurance Society of Wheeling, in part as follows: ''My brother Joe called me on the phone Sunday morning, September 2nd, stating Mr. Reed would be out to have me sign up an application as agent, also contract with Mutual Benefit. This was first intimation I had of Mrs. Hazlett applying in the Mutual Benefit; I had not solicited her or had any conversation with her on the subject. Mr. Reed had had examination made and she had signed application previous to his call on me. I knew that J. McF. had applied for insurance in other companies with the agreement that he was to divide with me. On account of age, application was not submitted to the Equitable. I had no knowledge that Reed had secured this application representing to Mrs. Hazlett that J. McF. Sweeney was the agent in the case, and that he was to receive commissions on same, which is apparent from

the written statements of Mrs. Hazlett also Mr. List." No offer was made by Harry F. Jefferson to share the commissions on the policy in the Mutual Benefit Company until August 7, 1929, after the matter had been presented to the insurance commissioner. The statute on which the original proceeding is predicated has been construed and declared constitutional in an able and elaborate opinion written by JUDGE LIVELY in *Swearingen* v. *Bond, Auditor and ex officio Insurance Commissioner,* 96 W. Va. 193, 122 S. E. 539.

Being of opinion that the evidence warrants a finding by the commissioner of violation by petitioner of the insurance law, at the least, in making an "incomplete comparison of policies" to Mrs. Hazlett for the purpose of inducing her "to take out a policy of insurance" in the Mutual Benefit Insurance Company, we reverse the ruling of the circuit court and dismiss the petition in certiorari.

*Reversed and dismissed.*