96 S.E.2d 225 (1956)
The BOARD OF TRUSTEES OF POLICEMEN'S PENSION OR RELIEF FUND OF The CITY OF HUNTINGTON
v.
The CITY OF HUNTINGTON, a Municipal Corporation, et al.
The BOARD OF TRUSTEES OF FIREMEN'S PENSION OR RELIEF FUND OF The CITY OF HUNTINGTON
v.
The CITY OF HUNTINGTON, a Municipal Corporation, et al.
Nos. 10850, 10851.
Supreme Court of Appeals of West Virginia.
Submitted October 9, 1956.
Decided November 20, 1956.
Dissenting Opinion January 28, 1957.
*229 Ducker, Keadle & McCreight, Huntington, for relators.
Russell C. Dunbar, Huntington, for respondents. *226 *227
*228 RILEY, Judge.
These are companion proceedings in mandamus, in one of which the petitioner is the Board of Trustees of the Policemen's Pension or Relief Fund of the City of Huntington, a corporation, and in the other the petitioner is the Board of Trustees of the Firemen's Pension or Relief Fund of the City of Huntington, a corporation. In both proceedings the City of Huntington, a municipal corporation, George E. Theurer, Mayor of the City of Huntington, David Fox, Jr., Elmer Kitchen, C. J. Lattin, Roy O. Deskins, Jesse B. Simons, Jack L. Gibson, Harold R. Ridenour, Herman S. Rice, A. J. Meadows, James D. Boardwine, Charles A. Adkins, Milford Jenkins and Joe Duffey, as members of the Council of the City of Huntington, are respondents. The proceedings were instituted under the original jurisdiction of this Court, wherein petitioners in their respective petitions seek a peremptory writ of mandamus, commanding and directing the respondents to levy on each one hundred dollars valuation of real and personal property listed for taxation in the City of Huntington at a rate not to exceed three and one-half cents on each one hundred dollars of property valuation as will produce the amount of tax moneys necessary to pay in full the estimated expenditures submitted by the petitioners to the Council of the City of Huntington as the fiscal and levying body thereof for the fiscal year beginning July 1, 1956, and ending June 30, 1957.
In their respective petitions the petitioners allege that each is an existing corporation, created by ordinance of the City of Huntington, adopted on June 7, 1926, by the Council of the City of Huntington, a municipal corporation, under and by virtue of Code 1931, 8-6-14, as last amended and reenacted by Chapter 124, Acts of the Legislature 1955; that each petitioner is vested by law with the right and duty of administering the funds and property comprising the Policemen's and the Firemen's Pension or Relief Funds of the City of Huntington, and possesses all of the powers and duties as set forth in Code 1931, 8-6-14, as amended and reenacted.
The petition in which the Board of Trustees of the Policemen's Pension or Relief Fund is the petitioner further alleges that on June 11, 1956, the petitioner notified and informed the respondents herein of the petitioner's estimated expenses for the fiscal year beginning July 1, 1956, and ending June 30, 1957; and that on August 7, 1956, prior to the consideration by the Council of the City of Huntington of its budget and tax levies estimate for said fiscal year, the petitioner, the Policemen's Pension or Relief Fund of the City of Huntington, filed with the municipal corporation and the other respondents, as mayor and members of the city council, a written statement and report showing that the petitioner's estimated expenses for the fiscal year 1956-57 would amount to sixty-four thousand two hundred ninety-three dollars; and also showing that even if it were legal to apply and use the estimated sum of ten thousand two hundred fifty-one dollars, to be raised by a three per cent assessment against the salaries of the members of the police department of said municipal corporation, as *230 provided by statute, and the sum of six thousand two hundred twenty-two dollars estimated to be produced by police court fines, there would still remain estimated expenditures amounting to forty-seven thousand eight hundred twenty dollars, for the payment of which it would be necessary to levy taxes, which statement called upon the respondents to provide the necessary funds by tax levies under the provisions of Chapter 8, Article 6, Section 14, of the 1931 Code of West Virginia, as last amended and reenacted.
The petitioner in the petition in which the Board of Trustees of the Firemen's Pension or Relief Fund of the City of Huntington is the petitioner alleges that on or about the 17th day of May, 1956, said petitioner notified and informed the respondents named in the petition of the amount of petitioner's estimated expenses for the fiscal year, commencing on July 1, 1956, and ending on June 30, 1957; and that on the 7th day of August, 1956, prior to consideration by the Council of the City of Huntington of its budget and tax levies estimate for the year commencing on July 1, 1956, and ending on June 30, 1957, the petitioner filed with the respondent municipal corporation and the other respondents, as mayor and city council thereof, a written statement and reportshowing that petitioner's estimated expenditures for that fiscal year amounted to sixty thousand one hundred eighty-three dollars, and also showing that even if it were legal to apply and use the estimated sum of fourteen thousand and twenty-eight dollars, to be raised by a three per cent assessment against the salaries of the members of the fire department of said municipal corporation, as provided by Code 1931, 8-6-14, as last amended and reenacted, there would still remain estimated expenditures amounting to forty-six thousand one hundred fifty-five dollars, for the payment of which it would be necessary to levy taxes, which statement called upon the respondents to provide the necessary funds by tax levies under the provisions of Chapter 8, Article 6, Section 14, Code of West Virginia 1931, as last amended and reenacted.
In paragraph three of both petitions it is alleged that notwithstanding the report of estimated expenses made by the respective petitioners and without taking any exception to the accuracy and necessity thereof, the respondents at the meeting on August 7, 1956, prepared the proposed budget and tax levy estimates for the City of Huntington for the fiscal year 1956-1957, and included therein for the Board of Trustees of the Policemen's Pension or Relief Fund the sum of twenty-four thousand one hundred three dollars and a like amount for the Board of Trustees of the Firemen's Pension or Relief Fund, which is equivalent to a levy of exactly one cent on each one hundred dollars of property in the City of Huntington listed for taxation, the total assessed valuation of that property being shown in said budget and levy estimate as aggregating two hundred forty-one million twenty-eight thousand seven hundred dollars, and which one cent levy obviously would produce funds sufficient to pay only a small fraction of the estimated expenditures submitted by each of the petitioners named in the respective petitions.
Both petitions allege that the failure and refusal of the respondents to levy taxes sufficient to meet and pay the estimated expenses submitted by each petitioner violated the express provisions of Chapter 8, Article 6, Section 14, of the 1931 Code of West Virginia, as last amended and reenacted, wherein the governing body of each municipal corporation having a population of not less than eight thousand three hundred is required to levy such rate within the limits of one cent to three and one-half cents on each one hundred dollars of property as will meet the estimated expenditures of the petitioners named in said petitions; and that under said statute and upon the particular facts herein set forth respondents have no discretionary right to levy only one cent or any rate which is clearly insufficient to meet the expenditures, as the *231 population of the City of Huntington is more than eight thousand three hundred.
Each petition alleges that the alleged unlawful acts or omissions of the respondents constitute a grave and immediate threat to the petitioner named therein, and also to the welfare and security, not only of retired petitioners, that is retired policemen and firemen, but their widows and families, but also to future petitioners as members of the two departments, their widows and families, inasmuch as more than ninety-six per cent of each of petitioner's estimated expenditures is for actual pension benefits for the fiscal year in question; and that immediate relief requiring respondents to increase tax levies to the necessary rate within the lawful maximum prescribed by Chapter 8, Article 6, Section 14, Code of West Virginia 1931, as last amended and reenacted, is necessary.
To each of the petitions the respondents filed their joint and several demurrers, which allege that the petition in each case is not sufficient in law for the following reasons: (1) Chapter 8, Article 6, Section 14, Code of West Virginia, as last amended and reenacted, gives respondents the right to determine if a levy in excess of one cent on each one hundred dollars of property is necessary, and that a writ of mandamus will not lie to prescribe in what manner respondents shall act or how they shall exercise their judgment and discretion; (2) that petitioners fail to show a clear right or pecuniary interest in the relief sought and are without right or standing to maintain their respective petitions; (3) that both petitioners have other specific and adequate remedies at law; (4) that each of the petitioners has unreasonably delayed its application for relief, whereby the rights of innocent parties would be prejudiced by the issuance of the writ; (5) that petitioners seek a writ to compel action on the part of respondents which respondents now have no authority to perform; and (6) for other reasons appearing on the face of each petition; wherefore, the respondents say that the petitions are insufficient in law, and move in their demurrers to the two petitions that this Court dismiss the petitions, and the respondents pray the judgment of this Court whether they should make any further plea "to the said writ."
To each of the petitions the respondents filed their joint and several answers, both of which answers set forth that respondents admit the truth of the allegations contained in Paragraph 1 of the petitions; and
"2. Respondents deny that on or about the 11th day of June, 1956, they were notified and informed as to the amount of petitioner's estimated expenditures for the fiscal year beginning July 1, 1956. Respondents admit that on August 7, 1956, the petitioner filed a report purporting to show petitioner's estimated expenditures for said fiscal year, but respondents allege that such report failed to disclose the full financial status or condition of said petitioner's pension fund; that such report failed to disclose to respondents how such figures were arrived at; and respondents further deny that it was shown that it was necessary for respondents to levy in the amounts sought by the petitioner.
"3. The respondents deny that they failed to take exception to the accuracy or necessity of the aforesaid report and respondents state that they did on August 7, 1956, take exception to said report and did on that date find that such funds as requested by the petitioner were not necessary. Respondents admit that on August 7, 1956, they did prepare a proposed budget and tax levy estimate which included a levy of one cent on each One Hundred Dollars ($100.00) of property listed for taxation, but deny that such levy would only be sufficient to pay a small fraction of the estimated expenditures of petitioner.
"4. Respondents deny that they have violated the express provisions of *232 Chapter 8, Article 6, Section 14 of Michie's 1955 Code of West Virginia and further deny that they have no discretionary right in determining whether they should levy in excess of one cent per One Hundred Dollars ($100.00) of property.
"5. Respondents deny that they have been guilty of any unlawful actions and omissions and further deny that they have been guilty of any acts or omissions which constitute a grave and immediate threat to the petitioners or to the welfare and security of retired pensioners, their widows and families. Defendants were not informed as to what per cent of petitioner's estimated expenditures are for actual pension benefits and neither affirm nor deny the allegations.
"6. Respondents further allege that they carefully considered the request by the petitioner for a levy in excess of one cent per One Hundred Dollars ($100.00) and that in considering said request they did consider the financial condition of the petitioner and its needs, and the needs and demands of other participants in the general fund of the City of Huntington. * * *"
In Paragraph 6 of the respondents' joint and several answer to the petition of the Board of Trustees of the Firemen's Pension or Relief Fund of the City of Huntington, a corporation, they also allege that they ascertained from the last audit of said petitioner's fund by the state tax commissioner's office that the petitioner had a balance of one hundred forty-three thousand two hundred fifteen dollars and fifty-five cents at the end of the fiscal year 1955; and that this was the last official report on the petitioner's financial status, although respondents were informed unofficially and informally that the petitioner's fund at the end of June 30, 1956, was one hundred nineteen thousand nine hundred seventy dollars and fifteen cents.
In the joint and several answer of the respondents to the petition of the Board of Trustees of the Policemen's Pension or Relief Fund it is alleged that they found from the last audit of petitioner's fund by the state tax commissioner's office that petitioner had a balance of eighty-six thousand seven hundred eighty-eight dollars and fifty-one cents at the end of the fiscal year 1955. That was the last official report on petitioner's financial status, although these respondents were later informed unofficially and informally that petitioner's fund on the 30th day of June, 1956, was fifty-seven thousand four hundred eight dollars and fifty-one cents.
In both answers the respondents allege and charge that the petitioners have failed to comply with the provisions of Code 1931, 8-6-16, as last amended and reenacted, which requires a report to be made to the respondents on the 31st day of December of each year, setting forth the financial condition of the said pension fund, and that the petitioners did not file such required reports on December 31, 1955, or on December 31, 1954.
Respondents also allege in their joint and several answer to the petition of the Board of Trustees of the Firemen's Pension or Relief Fund that in preparing the budget for the City of Huntington for the fiscal year 1956-1957 they found in their discretion and best judgment that petitioner would have available for said fiscal year sufficient funds for its operation and maintenance. Respondents found that petitioner would have available for said fiscal year not only the estimated receipts as submitted by petitioner to respondents, but an additional amount of sixteen thousand seven hundred eighty-two dollars due from the previous year's budget, which would make a total amount of thirty-five thousand four hundred fifty-two dollars available to the petitioner.
In the joint and several answer of the respondents to the petition of the Board of *233 Trustees of the Policemen's Pension or Relief Fund it is alleged that in preparing the budget for the City of Huntington for the fiscal year 1956-1957 they found in their discretion and best judgment that petitioner would have available for that fiscal year sufficient funds for its operation and maintenance. Respondents found that petitioner also would have available for the said fiscal year not only the estimated receipts as submitted by petitioner to respondents, but an additional amount of twenty thousand two hundred eighty-two dollars due from the previous year's budget which would make a total amount of thirty-seven thousand three hundred seventy-seven dollars available to petitioner.
The respondents both in their joint and several answers to the petitions of the Board of Trustees of the Policemen's Pension or Relief Fund and to the petition of the Board of Trustees of the Firemen's Pension or Relief Fund of the City of Huntington allege that the amount remaining in petitioners' respective funds as of July 1, 1956, was more than sufficient to take care of any sums necessary to meet necessary expenditures for the fiscal year in question which might exceed the estimated receipts.
Likewise the respondents in both their joint and several answers to the petitions of both petitioners allege and charge that the respondents are not bound to levy an amount to meet any demands made by the petitioners, but must, in their best judgment and discretion, give consideration to the needs and demands of all who share in the budget of the City of Huntington; and respondents further state that in their belief it was not the Legislature's intention to let petitioners accumulate large sums in their respective trust funds which are not to be used, while other municipal services have to be curtailed and the general public suffer.
Likewise the respondents in their joint and several answers to both petitions allege that the provisions of Code 1931, 8-6-14, as last amended and reenacted, clearly provide that the governing body of each municipal corporation shall determine if it is necessary to levy for the maintenance of the respective pension or relief fund in excess of the minimum levy of one cent for each one hundred dollars of property; and Paragraph 7 in both joint and several answers of the respondents to both petitions alleges and charges that the petitioners in their respective petitions have delayed unreasonably in asking this Court for relief, and that innocent parties will suffer if the writs prayed for are awarded; that each petitioner named in the respective petitions had knowledge in July, 1956, that the Finance Committee of the City of Huntington would not recommend that the Council levy more than one cent on each one hundred dollars of property, but that the minimum would be levied the same as had been done for the fiscal year 1954-1955; that the proposed budget for the fiscal year 1956-1957, as submitted to the City Council on August 7, 1956, would include only that minimum levy of one cent on each one hundred dollars of property; and that on August 7, 1956, the respondent, Council of the City of Huntington, did pass a proposed budget and levy for submission to the state tax commissioner for approval, which budget and levy carried a levy of one cent on each one hundred dollars of listed property, which was allocated for the pension or relief fund of each of the boards of trustees.
Likewise the respondents in their joint and several answers to both petitions allege and charge that the petitioners did not take court action after the action by the respondents on August 7, 1956, in adopting the proposed budget and levy for the fiscal year 1956-1957, and in submitting the same to the state tax commissioner for approval; but, on the contrary, each petitioner rested its case with the state tax commissioner's office, and, after being denied relief by that office, now seeks this writ.
Finally, the joint and several answers of the respondents to the petitions of the two *234 boards of trustees of the two funds allege and charge that the petitioner boards of trustees by choosing to delay the filing of their respective petitions for the writs prayed for have permitted the City of Huntington to operate under its adopted budget and levy for a period of more than three months; and, consequently, expenditures have been made by the City of Huntington and debts have been incurred in reliance upon the allocations set up by the two budgets, so that it would now cause a great deal of confusion, financial loss, hardship and break-down in some municipal services if respondents were asked now to rewrite an entirely new budget after having operated under said budget for more than three months; and it is alleged and charged that each petitioner should have immediately pursued whatever remedy it might have in the courts rather than to delay until a time when the budget had already been adopted and put in operation; and that by failing to do so both petitioners have allowed events to occur which would now cause innocent parties to suffer if the writs prayed for herein were granted, for if the writs were granted the additional amounts sought by the petitioners would have to be taken from other items of service in the budget.
Both the joint and several answers of the respondents to the respective petitions pray that the respondents may be hence dismissed from each proceeding.
The practice has prevailed in this Court for many years in cases of habeas corpus, mandamus and prohibition which were instituted under the original jurisdiction of this Court, as provided by Article VIII, Section 3 of the West Virginia Constitution, the only cases in which the Supreme Court of Appeals has original jurisdiction, that this Court will not try such cases in piecemeal. It therefore becomes necessary for this Court in such an original proceeding to ascertain initially whether the proceedings upon final submission for decision present only an issue or issues of law. As a corollary of this postulate of procedure, well known to the Bench and Bar of this State, the petitioner in such an original proceeding must always run the risk of submitting his case where there are undetermined issues of fact raised by the pleadings, which are not met by depositions, stipulation, or other competent proof, otherwise the uncontroverted allegations of the answer of the respondent must be taken as true. When the instant proceedings were argued and submitted to this Court, it was represented by counsel for the parties litigant that the pleadings, coupled with the stipulation of facts signed by counsel for both sets of litigants, presented no controlling issue of fact. It has therefore become necessary, as has heretofore been stated, to describe the pleadings filed by the petitioners and the respondents in extenso, and by the same token it is necessary to state in verbatim the following stipulation of facts, signed by counsel for both sets of litigants, and filed in this Court on the submission of the case, which stipulation is in words and figures as follows:
"1. That the petitioners are existing corporations by virtue of Chapter 45 of the act of the 1917 Legislature of West Virginia, as amended, and by an ordinance adopted by the governing body of the City of Huntington, West Virginia, on June 7, 1926; that the petitioners are invested by law with the right and duty of administering the funds and property of the Firemen's and Policemen's respective funds.
"2. That the Fire Pension Board on or about the 17th day of May, notified and informed the respondents that it would need for the fiscal year 1956-1957 a levy of two cents on each One Hundred Dollars ($100.00) of property listed for taxation; the Policemen's Pension Fund on or about June 11, 1956, informed the respondents that it would need approximately $47,820.00 *235 from the 1956-1957 budget for its needs for that fiscal year.
"3. That on August 7, 1956, both petitioners filed with the respondents the attached statements marked Exhibits `A' and `B' and requested the respondents to levy and allocate to the petitioners the amounts so requested.
"4. That on August 7, 1956, at its regular statutory budget and levy meeting, and immediately following the aforesaid requests of the petitioners, respondents recessed council meeting and met in closed session in the Mayor's office at which time they discussed several items in the 1956-1957 budget including the request of the petitioners. Following the recess, respondents returned to council chambers and adopted a budget and levy estimate for submission to the State Tax Commissioner which included only the levy of one cent each for the two funds respectively.
"5. That the council minutes of the August 7 meeting recited the following concerning the requests of the petitioners for a levy in excess of one cent:
"`At this time Mr. H. L. Ducker representing the Police and Fire Pension Board spoke to council concerning moneys due the Police and Fire Pension Fund from the City of Huntington. Mr. Ducker presented to council a statement of the estimated expenditures of the Board of Trustees of the Firemen's and Policemen's Pension or Relief Fund, showing that Forty-six Thousand One Hundred Fifty-Five Dollars ($46,155.00) and Forty-Seven Thousand Eight Hundred Twenty Dollars ($47,820.00) should be raised by tax levies to meet the estimated expenditures of the respective boards. There was no action taken by council on Mr. Ducker's request.'
"That council minutes further recite following the above, that council thereupon adopted the 1956-1957 budget and levy estimate, including therein only one cent for each of the two funds.
"6. That the following figures concerning both funds are true:

 "Firemen's Policemen's
 Fund Fund
 ___________ ___________
"Due from 1955-1956
 Budget $ 16,782.00 $ 20,282.00
"Balance as of June
 30, 1955 143,215.55 86,788.51
"Balance as of June
 30, 1956 119,970.15 57,408.51
"Amount levied in
 1955-1956 budget 24,103.00 24,103.00

"7. That the amount allocated by the respondents in the 1956-1957 budget is $23,717.00 less than that requested by the Firemen's Fund and $22,052.00 less than that requested by the Policemen's Fund.
"8. That on August 9, 1956, petitioners lodged with the State Tax Commissioner a protest to council's action in refusing to levy the amounts requested by the petitioners, asking the State Tax Commissioner to refuse to approve the budget and levy. On September 7, the State Tax Commissioner denied the request of the petitioners and issued on that date a qualified approval of the budget and levy submitted by the respondents. A copy of the Tax Commissioner's letter of qualified approval is attached hereto and marked Exhibit `C'.
"9. That the respondents met in session on September 10, 1956, and adopted the budget and levy as approved by the State Tax Commissioner, which budget included the levy of one cent for each of the petitioners' funds.
"10. That on September 12, 1956, petitioners applied for a writ of mandamus to this Court."

*236
 "Firemen's Pension Fund
 Estimate of Expenditures, for Levies
 July 1, 1956June 30, 1957
"Estimated Expenditures:
 Pension benefits $58,363.
 Refunds of Salary Assessments 1,200.
 Salary of Secretary 120.
 Administrative Expenses 500.
 ________
 $60,183 $60,183
"Estimated Receipts Applicable
to Current Expenditures:
 Salary Assessments $14,028. $14,028.
"Sum Necessary to Be Raised by Levies...............................$46,155.
 "Estimated Interest Addition to Invested
 Funds $ 4,642.
 "The Board of Trustees of the
 Firemen's Pension or Relief
 Fund of the City of Huntington
 By /s/ Claude L. Nelson
 Secretary
"Exhibit A".
 "Police Pension Fund
 Estimate of Expenditures, for Levies
 July 1, 1956June 30, 1957.
"Estimated Expenditures:
 Pension Benefits $62,193.
 Refunds of Salary Assessments 1,500.
 Salary of Secretary 100.
 Administrative Expenses 500.
 _________
 $64,293. $64,293.
"Estimated Receipts Applicable
to Current Expenditures:
 Salary Assessments $10,251.
 Police Court Fines 6,222.
 ________
 $16,473. $16,473.
"Sum Necessary to Be Raised by Levies...............................$47,820.
"Estimated interest addition to invested funds: $622.
 "The Board of Trustees of the Police
 men's Pension or Relief Fund of the
 City of Huntington
 "By /s/ James L. White, Secretary.
"Exhibit B"

*237 Under date of September 7, 1956, the Honorable Joseph S. Soto, State Tax Commissioner of West Virginia, addressed a communication to the Council of the City of Huntington, in which he conditionally approved the levies proposed by the budget of the City of Huntington for the fiscal year 1956-1957, submitted to the Tax Commissioner, for approval, subject to the following exceptions:
"Approval conditioned on authority to pay unpaid bills and contracts from previous year which were in excess of total budget. Also conditioned on immediately curtailing all expenses to insure that there will be no deficit at the end of the present fiscal year."
This letter of conditional approval made the following findings with respect to the levies proposed to be laid in excess of the rates prescribed by the constitutional limitations amendment, contained in West Virginia Constitution, Article X:
"* * * The levies for current expenses imposed by your common council are no more than are indispensable to the ordinary discharge of the governmental functions of the municipality, and the obligations for the payment of which such levies are proposed are contractual and regularly authorized by vote of the people and represented by outstanding bonds, the obligations of which were created prior to the adoption of the tax limitation amendment; and, except for the levies proposed to be laid for such indebtedness, the respective obligations thereof will be impaired."
The statutes which will control our decision in both proceedings are: (1) Code 1931, 8-6-10, as amended and reenacted by Chapter 53, Acts of the Legislature 1937, which provides for pension or relief funds for firemen and policemen, and trustees; (2) Code 1931, 8-6-11, which provides for the powers of the boards of trustees of firemen's pension or relief funds and policemen's pension or relief funds of municipalities, subject to the Act; (3) Code 1931, 8-6-14, as amended and reenacted by Section 14, Chapter 69, Acts of the Legislature, Regular Session 1935; Section 14, Article 6, Chapter 53, Acts of the Legislature, Regular Session 1937; Section 14, Article 6, Chapter 93, Acts of the Legislature, Regular Session 1945; Section 14, Article 6, Chapter 138, Acts of the Legislature, Regular Session 1951; Section 14, Article 6, Chapter 135, Acts of the Legislature, Regular Session 1953; and Section 14, Article 6, Chapter 124, Acts of the Legislature, Regular Session 1955, which provision of the Code as amended, provides for levies to maintain the firemen's and policemen's pension or relief funds; the authority of boards of trustees of such funds to take money, real or personal property by gift, grant, devise or bequest; the assessment of members of the departments, and the return of such assessments, and reads:
"In every municipality there shall be a firemen's pension or relief fund and a policemen's pension or relief fund, which shall be maintained as follows: The council or other governing body of each municipality shall levy annually and in the manner provided by law for other municipal levies, and include within the maximum levy or levies permitted by law, and if necessary in excess of any charter provisions, a tax of not less than one cent on each one hundred dollars of all real and personal property as listed for taxation in such municipality, and, if necessary, in excess of one cent, but not in excess of three and one-half cents so as to meet the estimated expenditures of the boards of trustees of the respective funds, for the firemen's pension or relief fund and a like levy on all real and personal property as listed for taxation in such municipality, for a policemen's pension fund: Provided, That in any city or municipality of eight thousand three hundred population or less the laying of the levies herein provided for shall be within the *238 discretion of the common council or other body of like power and duties in such city or municipality.
"The levies authorized under this section, or any part of them, may by the council or other governing body be laid in addition to all other municipal levies, and to that extent beyond the limit of levy imposed by the charter of such municipality; and such levies shall supersede and if necessary exclude levies for other purposes if such priority or exclusion is necessary under limitation upon taxes or tax levies imposed by law.
"Such corporations are authorized to take by gift, grant, devise or bequest, any money or real or personal property, upon such terms as to the investment and expenditure thereof as may be fixed by the grantor or determined by said trustees.
"In addition to all other sums provided for pensions in this section, it shall be the duty of every municipal corporation to assess and collect from each member of such fire department and police department each month, the sum of three per cent of the monthly basic pay of such fire or police department, that is, the monthly basic pay for all equally and regardless of rank or position of the member of such department and so that the amount of such deduction shall be the same for all members of such fire department and the same for all members of such police department, which amount so to be deducted shall be deducted from the monthly pay of such person; and the amount so collected shall become a regular part of the firemen's pension fund, if collected from a fireman, and of the policemen's pension fund, if collected from a policeman.
"Any member of a municipal fire or police department who is released or who before retirement on any pension severs his connection with said department, provided he has served two full years or more, shall, upon request, be refunded all deductions made from his salary, but without interest. In event such refund is made and such member subsequently reenters the department no credit shall be allowed him for any former service, unless any such member of a municipal fire or police department repays to the pension fund all sums refunded to him within one year from the date he reenters the departments with interest at the rate of six per cent per annum: And provided further, That any member who, at the time this amendment becomes effective, has already reentered the department, he shall be allowed credit for any former service upon repaying all sums withdrawn or refunded to him within one year from the date this amendment becomes effective with interest at the rate of six per cent per annum, but in no case shall interest be charged for more than three years."
and (4), Code 1931, 8-6-16, as last amended and reenacted by Section 16, Article 6, Chapter 136, Acts of the Legislature, Regular Session 1953, which provides how the trustees of the funds are to invest the money received and reads:
"The said board of trustees shall invest any moneys received by them either in interest bearing bonds of the United States, or of the State of West Virginia, or of the county, school district or municipal corporation in which such municipality may be situated, or upon improved real estate first lien security worth at least twice the amount loaned thereon, based on sound appraisal by a competent appraiser and duly certified by him. Said board of trustees shall make a report to the council of the municipality on the condition of such fund on the thirty-first day of December of each year."
*239 Initially we hold that the failure of the boards of trustees, as alleged in the respondents' joint and several answers, to make reports to the Council of the City of Huntington on the condition of their respective funds on the 31st day of December, 1954, and on December 31, 1955, as required by Code 1931, 8-6-16, as last amended and reenacted, does not of itself bar the petitioner boards of trustees from obtaining the relief sought for in their respective petitions. We say this, not because we are not of opinion that the provision of the statute immediately under consideration is not mandatory, but because any dereliction on the parts of the boards of trustees in that regard should not be invoked to thwart the strong salutary legislative policy which underlies the provisions of Code, 8-6, that members of paid police and fire departments of the municipalities of this State should have the security and protection which is inherent in the establishment of solvent policemen and firemen pension or relief funds. For this Court to hold otherwise would place at the disposal of the boards of trustees of municipalities where such funds have been established under the statute, the power to destroy the integrity of those funds by relieving the municipality of the duty of making a levy above the minimum levy prescribed by Code 8-6-14, as last amended and reenacted.
Under the rule of stare decisis that the council of a municipality, and not the boards of trustees of the policemen's or firemen's pension or relief funds, is the sole levying body thereof, this Court held in point 2 of the syllabus of Hamilton v. Mayor and Council of City of Charleston, 116 W.Va. 521, 182 S.E. 575, that: "The Legislature may not invest the boards of trustees of the firemen's pension or relief funds, in cities of more than twenty thousand population, with authority to fix and determine the amount that the councils or other governing bodies of said cities shall levy in support of said funds." In the last-mentioned case this Court, employing West Virginia Constitution, Article II, Section 2, which reads: "The powers of government reside in all the citizens of the State, and can be rightfully exercised only in accordance with their will and appointment", said, 116 W.Va. at page 524, 182 S.E. at page 576 of the opinion: "The council, or other governing body, of an incorporated town or city is the natural levying body and the one invested with the right to determine the amount in any particular instance, where the same is not specifically set by statute. It is directly answerable to the electorate. Its members are in truth public officers. Mere employees are not included in such category. They answer to the council or other governing body. Four members of the board are to be chosen from and by the firemen. The other feature is that the trustees to be chosen will be individually interested in the size of the fund, and may act contrary to the best interests of the municipality upon whom the Legislature has placed the burden of supplying a portion of the fund. This, in consideration of the fact that the firemen trustees provided for must answer only to the firemen, and not to the electorate or any official thereof, is contrary to the fundamental rules of justice." To the same effect see also People ex rel. Schlaeger v. Jarmuth, 398 Ill. 66, 75 N.E.2d 367.
It follows from the foregoing that the words "and, if necessary, in excess of one cent, but not in excess of three and one-half cents so as to meet the estimated expenditures of the boards of trustees of the respective funds", contained in Section 14 of the applicable statute, cannot be construed as a valid and constitutional delegation to the boards of trustees of the policemen's or firemen's pension or relief funds, organized under the provisions of Code 1931, 8-6-14, as last amended and reenacted, as vesting in such boards the power to determine the amount of levies necessary to augment or maintain the respective funds, and the council of a municipality is not divested thereby of its power to determine and make the necessary *240 levies, if any, in excess of one cent on each one hundred dollars valuation of property within the municipality.
Having decided that the governing body of a municipal corporation, such as the Council of the City of Huntington, has the sole power to levy for the policemen's and firemen's pension or relief funds, and before discussing the applicable provisions of Code 1931, 8-6-14, as last amended and reenacted, we note that such funds are public funds, as was held in the syllabus of this Court in the case of Gall v. City of Wheeling, 119 W. Va. 93, 192 S.E. 116, 112 A.L.R. 477, which holding of the Court, though somewhat important in the consideration of the specific questions of statutory construction before us, is not decisive of this case and has no great pertinency on the specific questions immediately before us.
While Code 1931, 8-6-14, as last amended and reenacted, in the final analysis is the controlling statute, it is important to note that Code 1931, 8-6-16, as last amended and reenacted by Section 16, Article 6, Chapter 136, Acts of the Legislature, Regular Session 1953, indicates a legislative intent that the trust funds provided for by Section 14, as last amended and reenacted, should be maintained on a solvent basis. Specifically, Code 1931, 8-6-16, as last amended and reenacted, provides that the boards of trustees of the policemen's and firemen's pension or relief funds shall be invested by the boards of trustees "either in interest-bearing bonds of the United States, or of the State of West Virginia, or of the county, school district or municipal corporation in which such municipality may be situated, or upon improved real estate first lien security worth at least twice the amount loaned thereon, based on sound appraisal by a competent appraiser and duly certified by him." Thus the specific provisions of Section 16, as last amended and reenacted, contemplate that there shall be maintained through the course of years invested funds for the benefit of the members of the police and fire departments of each municipality, except perhaps that under Code 1931, 8-6-14, as last amended and reenacted, any city or municipality with a population of eight thousand three hundred or less seems to be exempt from the broad provisions of the statute, which provides that the laying of levies for such municipalities with such population should be within the discretion of the common council or other body of like power and duties in such city or municipality; and such invested funds should be accumulated or maintained so as to meet the necessities for which they were created under the provisions of Section 14, as last amended and reenacted. This, of course, precludes counsel for the respondents, the City of Huntington, the mayor and council thereof, from successfully maintaining their position, as disclosed by this record, that this statute is complied with when levies are made to supplement the assessments made on the members of the police and fire departments of the City of Huntington, so that the fund may be maintained on a yearly basis in the sense that invested funds may be radically reduced in a given fiscal year, and then built up by levies in a subsequent year, as the contingencies arise. True, it was contemplated by the Legislature in the enactment of the statute, as counsel for respondents suggest, that the funds may not be built up so that the boards of trustees of both funds may have at their disposal unnecessarily large amounts for investment and as necessities require for the payment of pension benefits, for instance as suggested by one of counsel, in the amount of many thousands of dollars. But that position is far afield from the position of the petitioners, the Boards of Trustees of the Policemen's and Firemen's Pension or Relief Funds of the City of Huntington.
The petitions of the boards of trustees of the two funds simply pray that this Court will issue writs of mandamus which will prevent the Council of the City of Huntington by failing to levy for the fiscal *241 year 1956-1957 sufficient levies to maintain the two trust funds, and thus deplete the funds in order to supplement other municipal levies. This is contrary to the express provision of Section 14, as last amended and reenacted, which reads: "The levies authorized under this section, or any part of them, may by the council or other governing body be laid in addition to all other municipal levies, and to that extent beyond the limit of levy imposed by the charter of such municipality; and such levies shall supersede and if necessary exclude levies for other purposes if such priority or exclusion is necessary under limitation upon taxes or tax levies imposed by law."
While it is true that under the provisions of Section 14, as last amended and reenacted, the Council of the City of Huntington is under the mandatory duty to lay levies within the limits of not less than one cent on each one hundred dollars valuation of property listed and not more than three and one-half cents on each one hundred dollars valuation of property as may be necessary to raise the necessary sums of money to meet the required expenditures of the policemen's and firemen's pension or relief funds of that municipality as estimated by such council, the determination of "necessary" under the statute is a legislative declaration of a matter primarily of a juristical nature. The Council of the City of Huntington in laying the minimum levy, as provided by Section 14, as last amended and reenacted, did not, as it should have done, make any finding other than the laying of the minimum levies, as disclosed by the budget of the City of Huntington for the fiscal year 1956-1957. Though the ascertainment of a fact as the basis of an enactment by a legislative body ordinarily will not thereafter be opened for judicial determination, Woodall v. Darst, 71 W.Va. 350, 77 S.E. 264, 80 S.E. 367, 44 L.R.A.,N.S., 83, in the case of Berry v. Fox, 114 W.Va. 513, 172 S.E. 896, 901, this Court held that: "But we are not familiar with any principle of law which gives like weight and dignity to a legislative declaration in respect of an existing condition as of fact but actually juristical." In the Fox case this Court quoted extensively from the opinion of Mr. Justice Holmes in the case of Block v. Hirsh, 256 U.S. 135, 41 S.Ct. 458, 459, 65 L.Ed. 865, 16 A.L.R. 165, in which Mr. Justice Holmes said: "`No doubt it is true that a legislative declaration of facts that are material only as the ground for enacting a rule of law, for instance, that a certain use is a public one, may not be held conclusive by the Court. * * * But a declaration by a legislature concerning public conditions that by necessity and duty it must know, is entitled at least to great respect. In this instance Congress stated a publicly notorious and almost world-wide fact. That the emergency declared by the statute did exist must be assumed * * *'".
This Court directs attention at this stage of the discussion in this opinion to the provisions of Section 14, as last amended and reenacted, to a determination whether that section, both as to the laying of a levy of not less than one cent on each one hundred dollars valuation of property, listed for taxation in such municipality, and as to the levy of a tax in excess of one cent on each one hundred dollars of property listed for taxation in the municipality, is mandatory or directory. If the duty imposed is mandatory in both regards, the writs should be awarded in the manner and form prayed for in both petitions. If, however, the duty imposed on the council is mandatory only as to laying levies of not less than one cent on each one hundred dollars property valuation, the writs prayed for should not be awarded, nor should the writs be molded, as this Court may do in proceedings in mandamus. Neff v. Holley, 132 W.Va. 468, 470, 52 S.E.2d 386. Also Fisher v. Mayor, etc., of City of Charleston, 17 W.Va. 628; State ex rel. Mount Hope Coal Co. v. White Oak R. Co., 65 W.Va. 15, 64 S.E. 630, 28 L.R.A.,N.S., 1013; Densmore v. Mercer County Court, 106 W.Va. 317, 145 *242 S.E. 641; State ex rel. Savage v. Robertson, 124 W.Va. 667, 684, 23 S.E.2d 281; Dew v. Judges of Sweet Spring, 3 Hen. & M., Va., 1, 3 Am.Dec. 639, and as molded, awarded. We say this because the stipulation in these proceedings shows that the Council of the City of Huntington did, in fact, lay levies in the minimum amount of one cent for each one hundred dollars property valuation. The stipulation, however, shows that the council levied for the fiscal year 1956-1957 the amount of twenty-three thousand seven hundred and seventeen dollars less than was requested by the firemen's pension or relief fund, and twenty-two thousand and fifty-two dollars less than was requested by the policemen's pension or relief fund. On the basis of the minimum levies the stipulation shows that the council levied in 1956-1957 twenty-four thousand one hundred and three dollars for each pension or relief fund, being the minimum levy provided for by Section 14, as last amended and reenacted. But the stipulation further shows that out of the amounts levied in 1955-1956 there is due from the 1955-1956 budget to the policemen's pension or relief fund twenty thousand two hundred eighty-two dollars, and to the firemen's pension or relief fund the sum of sixteen thousand seven hundred eighty-two dollars. These amounts, however, due to the two funds do not, in our opinion, enter into the consideration of this case, because these two amounts are debts which the City of Huntington owes to the policemen's and firemen's pension or relief funds; but unlike the debt considered and set forth in the opinion of the Attorney General of West Virginia of October 11, 1956, rendered to Russell C. Dunbar, City Attorney of the City of Huntington, which is an invalid debt, the instant debts, being unpaid amounts of the levies for the fiscal year 1955-1956, are valid debts, which in any event the City of Huntington should pay into the two trust funds and should provide for in the budget of 1956-1957. Because these two debts are part of the minimum levies provided for in the 1955-1956 budget under Section 14, as last amended and reenacted, they are valid debts of the City of Huntington, and the unpaid amounts due to the two funds under the 1955-1956 budget should now, in any event, be paid into the two trust funds, and they do not enter into the consideration of this case, as this case is concerned only with the budget of the City of Huntington for 1956-1957 and whether the sufficiency of the levies made thereunder by the Council of the City of Huntington properly serves the two trust funds, under the provisions of Section 14, as last amended and reenacted.
This position, of course, is based upon the postulate that the provision of Section 14, as last amended and reenacted, providing that the council or other governing body of each municipality with a population of more than eight thousand three hundred shall lay minimum levies of not less than one cent on each one hundred dollars valuation of property listed within the municipality for each of the two funds. That the Council of the City of Huntington was under the mandatory duty to lay the minimum levy of one cent on each one hundred dollars valuation of property listed, which the stipulation and pleadings in these proceedings show it did for the fiscal years 1955-1956 and 1956-1957, can hardly be gainsaid. The pertinent provision of the statute provides that the council or governing body of each municipality having a population of more than eight thousand three hundred "shall levy annually and in the manner provided by law for other municipal levies, * * * a tax of not less than one cent on each one hundred dollars of all real and personal property as listed for taxation in such municipality."
Axiomatic in the law of statutory construction is the postulate that the word "shall", in the absence of something in the statute showing a contrariwise intent on the part of the Legislature, should be construed in a mandatory sense. In Baer v. Gore, 79 W.Va. 50, 90 S.E. 530, L.R.A. *243 1917B, 723, this Court held that generally the word "shall", when used in constitutions and statutes, leaves no way open for the use of discretion. To like effect see State ex rel. Boone County Coal Corp. v. Davis, 133 W.Va. 540, 56 S.E.2d 907, and the rule has been held in particular to apply to constitutional provisions. State ex rel. Trent v. Sims, 138 W.Va. 244, 77 S.E.2d 122. But the words "shall levy", as contained in Section 14, apply to the latter provision of the statute, so that impliedly the statute reads: "The council or other governing body of each municipality shall levy annually * * *, if necessary, in excess of one cent, but not in excess of three and one-half cents so as to meet the estimated expenditures of the boards of trustees of the respective funds, for the firemen's pension or relief fund and a like levy on all real and personal property as listed for taxation * * for the policemen's pension fund:". So, while it is true that under the holding of this Court in the case of Hamilton v. Mayor and Council of City of Charleston, supra, the Council of the City of Huntington, and not the trustees of the two funds, is the levying body, and such council is not bound in any event, notwithstanding the statute contains the words "* * * to meet the estimated expenditures of the boards of trustees of the respective funds," to accept the estimates submitted to the council by the two boards of trustees for the fiscal year 1956-1957, a copy of which is attached to the stipulation in these proceedings, the Council of the City of Huntington is bound to make levies in excess of the minimum levy of one cent on each one hundred dollars valuation of property within the municipality, if it is necessary to make levies in excess of the minimum levy in order to maintain the two funds on a solvent basis.
As the amounts of sixteen thousand seven hundred eighty-two dollars and twenty thousand two hundred eighty-two dollars due to the policemen's and firemen's pension or relief funds, respectively, are valid debts, they are not to be considered in determining whether this record discloses the necessity of levies in excess of the minimum levy provided by the statute. That being true, as shown by the stipulation, the balance as of June 30, 1955, in the firemen's pension or relief fund was one hundred forty-three thousand two hundred and fifteen dollars and fifty-five cents, and the balance in that fund as of June 30, 1956, was one hundred nineteen thousand nine hundred seventy dollars and fifteen cents; and the balance in the policemen's pension or relief fund as of June 30, 1955, was eighty-six thousand seven hundred eighty-eight dollars and fifty-one cents, and the balance in that fund as of June 30, 1956, was fifty-seven thousand four hundred eight dollars and fifty-one cents, the record conclusively shows that the minimum levy for the two funds made by the Council of the City of Huntington for the fiscal year 1956-1957 was insufficient to keep the two funds from becoming depleted on the basis of the minimum levies provided by statute. Thus it may readily be seen that as of June 30, 1955, and June 30, 1956, both funds were materially decreased, and even if the amounts due from the 1955-1956 budget of the City of Huntington to the two funds were put into the fund now in the hands of the boards of trustees there would still be a decrease in the funds during the fiscal year 1956-1957.
And, finally, to be considered by this Court in the decision of these proceedings are the allegations contained in respondents' joint and several answers to the effect that the petitioners' delay in instituting the instant proceedings in mandamus until after the budget for the fiscal year 1956-1957, as it had been conditionally approved by the state tax commissioner, had been adoptd by the Council of the City of Huntington on September 10, 1956, which delay, as alleged in the answers, would result in confusion in the fiscal affairs of the City of Huntington, and would require the adoption of a new and separate budget for the fiscal year 1956-1957. *244 The answer to this position lies in the simple fact that the budget, as conditionally approved by the state tax commissioner, was adopted by the Council of the City of Huntington on September 10, 1956, and two days later, on September 12, 1956, the instant proceedings were filed in the Clerk's office of this Court.
For the foregoing reasons we are of opinion that the decrease in the two trust funds from the amounts thereof on June 30, 1955, to the beginning of the fiscal year 1956-1957, that is on June 30, 1956, which decrease in funds would not be entirely made up if the City of Huntington had paid into the two trust funds the amounts due under the 1955-1956 budget, that the minimum levy of one cent on each one hundred dollars valuation of property listed, provided for in the instant budget of 1956-1957, would be insufficient to raise the necessary sums of money to meet the required expenditures of the policemen's and firemen's pension or relief funds of that municipality as estaimated by such council.
In the decision of this case this Court does not impugn the motives and integrity of the members of the Council of the City of Huntington, as there is nothing in this record which in any manner would permit this Court to do so.
We simply hold for the foregoing reasons that the writs of mandamus prayed for should be molded and, as molded, should issue, directed to the Mayor and the members of the Council of the City of Huntington, commanding the Council of the City of Huntington to be reconvened and lay levies for the fiscal year 1956-1957 in excess of the minimum of one cent on each one hundred dollars valuation of property listed, but not more than three and one-half cents on each one hundred dollars valuation of property, being the limits prescribed by Section 14 of the statute, as last amended and reenacted, as may be necessary to raise the necessary sums of money to meet the required expenditures of the policemen's and firemen's pension or relief funds of that municipality as estimated by such council.
Writs molded and, as molded, awarded.
HAYMOND, Judge (dissenting).
The question presented in these original proceedings in mandamus, and the only question, is whether a levy in excess of one cent on each one hundred dollars on all real and personal property listed for taxation in the City of Huntington is necessary to meet the estimated expenditures of the boards of trustees of the firemen's pension or relief fund and the policemen's pension or relief fund during the fiscal year July 1, 1956 to June 30, 1957, under the provisions of Section 14, Article 6, Chapter 8, Code, 1931, as amended by Section 14, Article 6, Chapter 124, Acts of the Legislature, 1955, Regular Session, which section of the statute is quoted in full in the majority opinion. Instead of limiting its decision to that question the majority of the Court has discussed, considered, and determined other questions not fairly presented by the record and, in my judgment, has erroneously decided the controlling question in these proceedings. For these reasons I register this dissent.
The question dealt with in point 1 of the syllabus is not material to the single controlling issue involved in these proceedings and should not have been embraced in the syllabus. Whether the boards of trustees of the firemen's and the policemen's pension or relief funds of the City of Huntington reported the condition of those funds on December 31, 1954, or on December 31, 1955, or did not then report the condition of those funds, has no bearing whatsoever upon the question involved which is whether a levy in excess of one cent on each one hundred dollars on the real and personal property listed for taxation in the municipality is necessary to meet the estimated expenditures of the boards of trustees for the subsequent fiscal year which began on July 1, 1956 and will end on June 30, 1957. The record in these proceedings *245 shows the unquestioned financial condition of each of the funds on June 30, 1955, and on June 30, 1956, and whether the condition of each fund was reported on December 31, 1954, or on December 31, 1955, is of no importance whatsoever and is entirely irrelevant to the determination of the controlling question involved.
The question whether the moneys in the policemen's and firemen's pension or relief funds provided for in the statute are public funds of the municipality in which the boards of trustees of those funds operate likewise is not presented and no question as to the character of such funds is raised in each of these proceedings. For that reason the question of the character of such funds should not have been dealt with in point 5 of the syllabus.
The majority has also discussed, considered and determined the question of the solvency of each of the funds involved. The solvency of each fund is not challenged and no question concerning the solvency of either fund is presented by the record. Despite the absence of any such issue the question of the solvency of each fund is unnecessarily dealt with in point 6 and point 8 of the syllabus.
Though the provision of Section 14, Article 6, Chapter 8, Code, 1931, as amended, that "In every municipality there shall be a firemen's pension or relief fund and a policemen's pension or relief fund, which shall be maintained * * *", by necessary implication requires such fund to be maintained on a solvent basis, the solvency of either fund as now constituted and maintained is not challenged. No party to these proceedings contends that either fund is now insolvent, or that its solvency will be threatened or destroyed, if with a levy of one cent on each one hundred dollars of all real and personal property listed for taxation in the City of Huntington for the fiscal year July 1, 1956 to June 30, 1957, the estimated expenditures of the board of trustees of each fund are paid from the money produced by such levy, which for each fund will amount to approximately $24,000.00, and from the money now in each fund.
That a levy of one cent together with other assets in each fund has been in the past and is now completely adequate to provide sufficient money to pay the actual expenditures of the board of trustees of each fund, during each fiscal year, and to create a surplus for each fund is fully established by the written stipulation, agreed to by the parties, which is quoted in the majority opinion.
The figures in paragraph six of the stipulation, relating to the financial condition of the firemen's fund, which are not disputed, show that as of June 30, 1956, the balance in that fund was $119,970.15 and that there was due from the 1955-56 budget $16,782.00. These two items aggregate $136,752.15 and that amount, exclusive of estimated salary assessments of $14,028.00 and estimated interest addition of $4,642.00, is more than double the amount of the total estimated expenditures of $60,183.00 and is, of course, sufficient to pay all such estimated expenditures. If the estimated salary assessments of $14,028.00, the estimated interest addition of $4,642.00 and the sum of approximately $24,000.00, which would be raised by a one cent levy, are added to the foregoing sum of $136,752.15, the total funds available for the fiscal year July 1, 1956 to June 30, 1957, amount to $179,422.15, which is $119,239.15 more than the expenditures estimated by the board of trustees of $60,183.00 for that fiscal year.
As to the financial condition of the policemen's fund the figures in paragraph six of the stipulation, which are likewise not disputed, also show that as of June 30, 1956, the balance in that fund was $57,408.51 and that there was due from the 1955-56 budget $20,282.00. These two items aggregate $77,690.51 and that amount, exclusive of estimated salary assessments of $10,251.00, estimated police court fines of $6,222.00 and estimated interest addition of $622.00, is $13,397.51 more than the total estimated *246 expenditures of $64,293.00 and is, of course, sufficient to pay all such total estimated expenditures. If the estimated salary assessments of $10,251.00, the estimated police court fines of $6,222.00, the estimated interest addition of $622.00 and the sum of approximately $24,000.00, which would be raised by a one cent levy, are added to the foregoing figure of $77,690.51, the total available funds for the fiscal year July 1, 1956 to June 30, 1957, amount to $118,785.51, which is $54,492.51 more than the expenditures estimated by the board of trustees of $64,293.00 for that fiscal year.
In short, with a levy of one cent, after the payment of the estimated expenditures which, of course, include benefits to pensioners, the balance in the firemen's fund would amount to $119,239.15, and the balance in the policemen's fund would amount to $54,492.51. These highly satisfactory and beneficial results have been accomplished by the levy of a tax of only one cent in the past, and in the face of these uncontroverted facts any necessity for the levy of a tax in excess of one cent during the fiscal year July 1, 1956 to June 30, 1957, simply does not exist.
In view of the foregoing undisputed figures which clearly establish the financial condition of each fund for the fiscal year July 1, 1956 to June 30, 1957, it is manifest that a one cent levy together with the money in each fund is sufficient to pay the expenditures estimated by the board of trustees of each fund during that period and that any levy in excess of one cent is not only wholly unnecessary but is clearly not authorized by any provision of the applicable statute. Section 14 of the statute requires the council or other governing body of each municipality, subject to its provisions, to levy annually a minimum tax of not less than one cent on each one hundred dollars of all real and personal property listed for taxation in such municipality. It does not require or authorize any such municipality to levy a tax in excess of one cent unless a tax in excess of that figure is necessary to meet the estimated expenditures of the board of trustees of the firemen's pension or relief fund and the policemen's pension or relief fund. As the undisputed facts, established by the stipulation, show beyond question that a one cent levy, in view of the financial condition of each fund, is sufficient to meet the expenditures estimated by the board of trustees of each fund for the fiscal year July 1, 1956 to June 30, 1957, the action of the council in levying a tax of one cent and in refusing to levy a tax in excess of that figure was clearly right and should not have been disturbed by this Court.
The action of the council was based upon and fully supported by undisputed facts and was approved by the state tax commissioner in his conditional acceptance of the budget of the municipality submitted to him for the fiscal year July 1, 1956 to June 30, 1957. Despite these wholly uncontroverted facts and its holding in point 9 of the syllabus that the "ascertainment of a legislative fact, which is primarily of a juristical nature, ordinarily will not be opened for judicial determination" and that a legislative declaration with respect to an existing condition as a fact but which is actually juristical will be given weight and dignity, the majority by its present decision ignores and disregards the finding of the council, which constituted an "ascertainment of a legislative fact," that a levy of a tax of one cent was sufficient to meet the expenditures estimated by the board of trustees of each fund for the fiscal year July 1, 1956 to June 30, 1957.
The levy by the council of the City of Huntington of a tax of one cent on all the real and personal property listed for taxation in that municipality for the fiscal year July 1, 1956 to June 30, 1957, was neither arbitrary nor capricious. On the contrary its action in fixing the levy on that basis and in finding that to meet the expenditures estimated by the board of trustees of each fund it was not necessary to levy a tax in excess of one cent is fully sustained by the *247 uncontroverted facts which reveal the financial condition of each fund for that fiscal year.
Though the majority in point 3 and point 4 of the syllabus gives recognition to the proposition that the council of a municipality is vested with discretion in determining whether a levy in excess of one cent on each one hundred dollars of the value of property within the municipality is necessary, and in point 3 of the syllabus declares that this Court will not in the first instance, and in the absence of arbitrary action upon the part of such council, determine or control the fiscal affairs of any municipality in this State, by its decision the majority has in fact controlled the exercise of discretion by the council of the City of Huntington, has rejected its finding, which is neither arbitrary nor capricious, that the levy of a tax of one cent is sufficient to meet the expenditures estimated by the board of trustees of each fund and that the levy of a tax in excess of one cent is not necessary for that purpose during the fiscal year July 1, 1956 to June 30, 1957, has in effect forced the council, despite its finding to the contrary, to accept the estimate of the expenditures determined by the board of trustees of each fund and to levy a tax in excess of one cent to meet the amount of that estimate, and, contrary to the pronouncements in point 2 and point 4 of the syllabus that the Legislature may not vest and has not by the statute vested in the boards of trustees the authority to fix and determine the amount to be levied by the council, has actually permitted the board of trustees of each fund, instead of the council of the municipality, to fix and determine the rate of such levy.
In addition to its gratuitous holding that each fund should be maintained on a solvent basis, which merely declares what the Legislature has already required by necessary implication, the majority in effect transforms each admittedly solvent fund into an irreducible fund. Though the statute requires each fund to be maintained upon a solvent basis, there is no provision in the statute which indicates in any wise whatsoever that the Legislature intended either fund to acquire the status of an irreducible fund. If the expenditures estimated by the board of trustees of either fund for any given fiscal year must be met in full by the annual levy of a tax in excess of one cent, the amount of which is subject only to the statutory limitation of three and one-half cents, and the balance in each fund may not be used for that purpose in conjunction with the minimum levy of one cent, the balance in the fund will be increased each year to the extent of the difference between the amount provided by such levy and the amount necessary to meet the annual estimated expenditures; and this constantly increasing balance, constituting an unnecessary burden upon the taxpayers of the municipality, can not be used to meet in part the estimated annual expenditures but apparently must remain in the fund.
In my judgment the Legislature, in enacting the statute, never intended the accomplishment of any such intolerable result. It is clear to me that the intention of the Legislature was that the money provided by the minimum levy of one cent and any available balance in the fund should be used together to meet the annual estimated expenditures and that no levy in excess of one cent should be imposed by the municipality until and unless the amount produced by the minimum levy and any available balance in the fund together become insufficient for that purpose.
The present practice, popular with and engaged in by many tax authorities at all governmental levels, national, state and local, of levying excessive taxes to create a particular fund and to maintain and develop it in financial proportions beyond the needs for which it is created is a manifest abuse of the taxing power and, by imposing unnecessary, excessive, and unjust burdens upon the taxpayers, constitutes a real *248 threat to the existence of free government. Such practice should not receive judicial sanction but on the contrary should in every instance be condemned and prohibited by the courts. In these days of excessive taxation at all governmental levels and wasteful expenditure of public funds created at the expense of the taxpayers, the warning uttered by Daniel Webster in his argument and incorporated in the opinion of Chief Justice Marshall in M'Culloch v. The State of Maryland, 4 Wheat. 316, 4 L.Ed. 579, that the power to tax is the power to destroy should be remembered and heeded at all times by every department of government. That warning should never be forgotten and the destructive use of the taxing power should never be encouraged or permitted. If the annual balance in each fund is constantly increased the taxpayers of the municipality are subjected to an unjust and excessive rate of taxation which provides money for each fund beyond the needs for which it was created. In my judgment the decision of the majority requires unnecessary and excessive taxation and permits the continual accumulation of unneeded surpluses in each of the funds involved in these proceedings. With that result I do not agree.
This Court has consistently held that the impartial exercise of discretion by the council of a municipality, after investigation and consideration, can not be controlled by mandamus. State ex rel. Smith v. Town of Ravenswood, 104 W.Va. 614, 140 S.E. 680; State ex rel. Lockett v. Board of Commissioners of the City of Huntington, 103 W.Va. 723, 138 S.E. 397; State ex rel. Hoffman v. Town of Clendenin, 92 W.Va. 618, 115 S.E. 583, 29 A.L.R. 37; State ex rel. Hamrick v. County Court of Pocahontas County, 92 W.Va. 222, 114 S.E. 519. It has also declared in numerous cases that mandamus will not lie to control a tribunal or officer in the performance of a discretionary act, in the absence of caprice, passion, partiality, fraud, arbitrary conduct, some ulterior motive, or misapprehension of law upon the part of such tribunal or officer. Meador v. County Court of McDowell County, 141 W.Va. , 87 S.E.2d 725; State ex rel. Ward v. County Court of Raleigh County, 138 W.Va. 551, 76 S.E.2d 579; State ex rel. Payne v. Board of Education of Jefferson County, 135 W.Va. 349, 63 S.E.2d 579; Beverly Grill, Inc., v. Crow, 133 W.Va. 214, 57 S.E.2d 244; Carter v. City of Bluefield, 132 W.Va. 881, 54 S.E.2d 747; Robertson v. Warth, 132 W.Va. 398, 52 S.E.2d 237; State ex rel. Conley v. Pennybacker, 131 W.Va. 442, 48 S.E.2d 9; Hinkle v. Town of Franklin, 118 W.Va. 585, 191 S.E. 291; Walden v. State Compensation Commissioner, 113 W.Va. 307, 167 S.E. 743; Wiley v. County Court of Mercer County, 111 W.Va. 646, 163 S.E. 441; Reynolds v. State Road Commission, 111 W.Va. 398, 162 S.E. 319; State ex rel. Dillon v. Neal, 104 W.Va. 259, 139 S.E. 757; Ellis v. State Road Commission, 100 W.Va. 531, 131 S.E. 7; State ex rel. Buxton v. O'Brien, 97 W. Va. 343, 125 S.E. 154; Swearingen v. Bond, 96 W.Va. 193, 122 S.E. 539, 36 A.L.R. 1500; State ex rel. Noyes v. Lane, 89 W. Va. 744, 110 S.E. 180; County Court of Taylor County v. Holt, 61 W.Va. 154, 56 S.E. 205; Marcum v. Ballot Commissioners of Lincoln, Logan, Mingo and Wayne Counties, 42 W.Va. 263, 26 S.E. 281, 36 L.R.A. 296; State ex rel. Wayne County Court v. Herrald, 36 W.Va. 721, 15 S.E. 974; Miller v. County Court of Tucker County, 34 W.Va. 285, 12 S.E. 702; State ex rel. Boggs v. County Court of Wood County, 33 W.Va. 589, 11 S.E. 72; Satterlee v. Strider, 31 W.Va. 781, 8 S.E. 552; State ex rel. Miller v. Buchanan, 24 W.Va. 362. Contrary to and despite the pronouncements of this Court in the cases just cited, the decision of the majority disturbs and vacates the impartial and considered discretionary action of the council in determining that the levy of a tax in excess of one cent was not necessary to meet the estimated expenditures during the fiscal year July 1, 1956 to June 30, 1957, and controls the exercise of discretion by the council by requiring it to levy a tax in excess of one cent on each *249 one hundred dollars of the property listed for taxation in the municipality for the purpose of meeting such estimated expenditures for that fiscal year.
As the undisputed facts disclosed by the record establish beyond even the shadow of a doubt that a levy in excess of one cent is entirely unnecessary and therefore wholly unwarranted and without justification from the standpoint of law, fact or reason, the petitioner in each of these proceedings has utterly failed to show a clear legal right to the remedy afforded by mandamus. By a heretofore unbroken line of decisions this Court has held that in mandamus the petitioner must show a clear legal right to the relief which he seeks. State ex rel. Public Service Commission v. Southern West Virginia Oil and Gas Corporation, 141 W.Va. , 91 S.E.2d 737; Meador v. County Court of McDowell County, 141 W.Va. , 87 S.E.2d 725; State ex rel. Watts v. Kelly, 140 W.Va. 177, 83 S.E.2d 465; State ex rel. Dunn v. Griffith, 139 W.Va. 894, 82 S.E.2d 300; Adams v. Londeree, 139 W.Va. 748, 83 S.E.2d 127; State ex rel. Emery v. Rodgers, 138 W.Va. 562, 76 S.E.2d 690; Hockman v. County Court of Tucker County, 138 W.Va. 132, 75 S.E.2d 82; State ex rel. Trent v. Amick, 137 W.Va. 842, 74 S.E.2d 587; Gibson v. Bower, 137 W.Va. 462, 73 S.E. 2d 817; State ex rel. Daily Gazette Company v. County Court of Kanawha County, 137 W.Va. 127, 70 S.E.2d 260; State ex rel. Payne v. Board of Education of Jefferson County, 135 W.Va. 349, 63 S.E.2d 579; State ex rel. Burford v. McKee, 135 W.Va. 18, 62 S.E.2d 281, 23 A.L.R.2d 798; State ex rel. West Virginia State Lodge, Fraternal Order of Police v. City of Charleston, 133 W.Va. 420, 56 S.E.2d 763; State ex rel. Conley v. Pennybacker, 131 W.Va. 442, 48 S.E.2d 9; State ex rel. Koontz v. The Board of Park Commissioners of the City of Huntington, 131 W.Va. 417, 47 S.E.2d 689; State ex rel. Goloversic v. Arnold, 128 W.Va. 272, 36 S.E.2d 209; Childers v. State Road Commissioner, 124 W.Va. 233, 19 S.E.2d 611; Ebbert v. Bouchelle, 123 W.Va. 265, 14 S.E.2d 614; Brumfield v. Board of Education, 121 W.Va. 725, 6 S.E. 2d 238; Rusinko v. Shipman, 111 W.Va. 402, 162 S.E. 316; Antonovich v. State Compensation Commissioner, 110 W.Va. 273, 157 S.E. 591; State ex rel. Woodyard Publications v. County Court of Hardy County, 108 W.Va. 166, 150 S.E. 512; Hall v. Stepp, 105 W.Va. 487, 143 S.E. 153; State ex rel. Goshorn v. Johnson, 102 W. Va. 629, 135 S.E. 899; State ex rel. Kelly v. State Road Commission, 102 W.Va. 88, 134 S.E. 465, 53 A.L.R. 146; State ex rel. Blackwood v. Brast, 98 W.Va. 596, 127 S.E. 507; State ex rel. Jones v. Kuhn, 94 W.Va. 415, 120 S.E. 888; State ex rel. Miller v. City of Spencer, 93 W.Va. 516, 117 S.E. 226; State ex rel. Smith v. County Court of Kanawha County, 78 W.Va. 168, 88 S.E. 662, 20 A.L.R. 1030.
For the various reasons stated and under the authorities cited in this dissenting opinion, I would refuse a writ in any form and would dismiss each proceeding at the cost of the petitioner.
I am authorized to say that Judge LOVINS, before his recent retirement from this Court, concurred in the views expressed in this dissent.